### 520. AUSTIN *v.* CENTRAL OF GEORGIA RAILWAY CO.

1. A judgment of the Supreme Court, deciding that the court below erred in not granting a new trial because under the pleadings and evidence as they appeared in that record a verdict was contrary to the evidence, does not operate as a res adjudicata or as an estoppel by judgment, so as to prevent a recovery by the plaintiff on a new trial when the pleadings are amended and the evidence is substantially different.

2. A master may and should establish rules for the government of employees in the conduct of his business; but as against the contention that the servant has been guilty of such contributory negligence as to defeat a recovery by reason of the fact that he has violated a duly promulgated rule, it may be shown that such rule has been abrogated, or compliance with it waived by reason of violations of it in practice by the servants with the knowledge and tacit consent of the master or those who represent him.

3. Whether the rule in question was applicable to the employee injured,

and whether it had been abrogated, were, under the evidence submitted, jury questions.

4. The court erred in directing a verdict.

Action for damages, from city court of Atlanta—Judge Reid. January 30, 1907.

Argued October 22,—Decided November 14, 1907.

Rehearing denied February 26, 1908.

*Westmoreland Brothers, W. C. Cousins,* for plaintiff.

*Dorsey, Brewster, Howell & Heyman, H. C. Erwin,* for defendant.

RUSSELL, J. The plaintiff in error brought suit in the city court of Atlanta against the Central of Georgia Railway Company for damages arising from the homicide of her son, William Austin. She alleged that William Austin was in the employment of the defendant in its yards in the city of Atlanta, as a switchman and car-coupler, and that on the night that he was killed he was directed by the conductor to uncouple cars, and that in doing this work he was obliged to be on the side of the engineer, in order to give signals. She further alleged, that the uncoupling had to be done by hand, as there was no lever on that side of the car; that he did not give any signal for the engineer to go back; that at the point where he was to uncouple the cars, the ground was rough, and the switch at that point was badly worn and out of repair; and that on account of the defect in the switch, it made a wide opening, which caught his foot, whereby he was run over by the car and killed. On a former trial the plaintiff recovered a verdict for $5,000 against the defendant, and the case was taken, by writ of error, to the Supreme Court, where the judgment was reversed. *Central Ry. Co.* v. *Austin,* 114 *Ga.* 905. Considering the state of the record at that time, the Supreme Court held, upon the evidence and the allegations therein, that the plaintiff was not entitled to recover, the court saying: "The evidence for the plaintiff fails to sustain any of the allegations of negligence on the part of the defendant, and the evidence for the defendant demonstrates that it was not guilty of any negligence whatever causing the death of the deceased or contributing thereto. This being true, the verdict was without evidence to support it and was contrary to law." In accordance with the judgment of the Supreme Court, a new trial was ordered. Upon the second trial the plaintiff struck

the sixth.and seventh paragraphs of the original petition, and in lieu of said paragraphs, by amendment, alleged, that the conductor in charge on the night of the homicide of her son directed him to uncouple said cars, and in obedience to said order he went between said cars to do the work, but before he had time to accomplish it and get out, said conductor, without any signal from him, gave to the engineer what is known as a quick or highball signal; and in obedience to said signal the engineer rushed back·at a high rate of speed, knocking her son down, and his foot caught in the switch and he was killed. The defendant denied the charges of negligence, and averred that the deceased, William Austin, was negligent. It also relied upon a contract and certain rules, in bar of plaintiff's right to recover. At the conclusion of the evidence, the court directed a verdict for the defendant; and error is assigned upon this ruling. The defendant company filed a plea of res adjudicata in bar of plaintiff's ·cause of action, at the conclusion of the evidence, averring that the evidence introduced by plaintiff and defendant is substantially the same as that introduced on the preceding trial, and that the allegations of the petition are substantially as they were when the judgment reversed by the Supreme Court was rendered. The defendant, therefore, pleaded the judgment of March 25, 1902, making the judgment of the Supreme Court the judgment of the city court of Atlanta, as res adjudicata and a bar to the present suit. The main question in this case is, whether the plea of res adjudicata was sustained. All the other questions are subsidiary to and· dependent upon this.

We have carefully examined the record in the case which was considered by the Supreme Court, and compared it with the record in the present case. That court very properly held that the plaintiff failed to sustain her allegations of negligence. It did not hold that the plaintiff could in no event recover. The language used in the headnote is, "the evidence showing, without contradiction, that the defendant was not negligent in any of the *particulars alleged.*" It is true that it is stated in the opinion that "even if the deceased was without fault, the defendant was not shown to have been negligent;" but this language must be construed with the rest of the opinion from which we have quoted, and in view of the fact that the thought it expressed is not embodied in the headnote of the court. We are clear in the opinion that if the

plaintiff's petition had been amended before the previous trial, so as to set forth the grounds of negligence as they are now set forth by the amendment, the evidence in behalf of the plaintiff, even on the former trial, would have authorized a recovery.

In view of the amendment offered by the plaintiff to her petition, the plea of res adjudicata can not be properly sustained. The judgment of the Supreme Court, deciding that the court below erred in not granting a new trial, because, under the pleadings and evidence as they appeared in that record, the verdict was contrary to the evidence, does not operate as a res adjudicata, or as an estoppel by judgment, so as to prevent a recovery by the plaintiff on the new trial when the pleadings are amended. The judgment of the city court of Atlanta upon the remittitur, making the judgment of the Supreme Court the judgment of that court, could go no further than the judgment of the Supreme Court; and the judgment of the Supreme Court did not purport to do more than set aside the judgment theretofore rendered in the case and thereby leave the action pending for proper legal disposition in the city court of Atlanta. So that there was really no final judgment in the case which could be pleaded as res adjudicata; and this seems to have been recognized by the trial judge. If our surmise is correct, he construed the decision of the Supreme Court as being the law of the case, and, viewing the evidence as identical, he came to the conclusion that the plaintiff could not recover, and therefore directed a verdict for the defendant. He neglected, however, to take into consideration the amendment allowed to the petition, which, by alleging an additional ground of negligence and striking out a ground of negligence relied upon in the former trial, varied the issue between the parties. As ruled by this court in *Missouri Ins. Co.* v. *Lovelace,* 1 *Ga. App.* 450, "it is not sufficient that there is an inference of a decision upon the very point." It must appear that there was identity of issue. As held by the Court of Appeals of New York in Palmer *v.* Hussey, 87 N. Y. 307, if the issues are identical the judgment closes the door to further contest; "but if not identical, or if, under similar description and name, they may be essentially different, the judgment is either not conclusive at all, or only becomes so when an examination of the facts upon which it is founded demonstrates the actual and real identity of the issues involved." And on page 303 it is said:

"The conclusive character of a judgment as a bar extends only to identical issues; and they must be such not merely in name, but in fact and substance. If the issue in the later litigation is intrinsically and substantially an entirely different one, . . then the truth is not excluded by the judgment."

In every court of record the issues are ascertained and determined by the pleadings. We will, therefore, compare the respective issues in the sixth and seventh paragraphs of the plaintiff's petition when the case was first tried and as it was presented to the Supreme Court, and the sixth and seventh paragraphs as they appeared after amendment on the trial which is now the subject-matter of our consideration, to ascertain whether the negligence alleged is identical or different. Paragraph 6 of the original petition was as follows: "(6) That the purpose of said engineer in running his engine back was to kick said car, and hard enough to throw it back sufficiently on the track, which he had failed to do in his first effort as alleged aforesaid." Paragraph 7 of the original petition was as follows: "(7) That the backing of said engine without a signal from William Austin was negligence, and caused said Austin's death; that William Austin gave no signal for the engine to move, and if the engineer had a signal to move, it was not given by William Austin; and if given by another member of his crew, it was negligence and given before he, Austin, had time to accomplish his work and get out from between the cars." Paragraphs 6 and 7 of the amendment, which were substituted for the original 6th and 7th paragraphs, are as follows: "(6) That when her deceased son, in obedience to the order of the conductor, went between the cars to uncouple them, the train was moving very slowly, and the conductor, knowing of her son's perilous position, gave the engineer a signal to come back fast, and he immediately and suddenly rushed the train back on to her son, thereby knocking him down and causing his foot to be caught in the defective switch, as alleged in her original complaint, and he was run over and killed; and plaintiff alleges that this conduct of the conductor was grossly negligent, and caused or contributed to her son's homicide." "(7) That the engineer saw her said son when he went in between said cars, and knew he was still in there; and it was not only negligent, but inhuman and criminal in him, to so quicken the speed of the train while her said son

was between the cars; and this gross carelessness and criminal negligence on the part of this engineer was the proximate cause of the death of her son, but for which he could have done his work and got from between the cars in safety, as was constantly done in the yards of the defendant by him and others."

In the original petition it was not alleged that the conductor ordered the son of the plaintiff to go in between the cars, nor that the conductor, with a knowledge of her son's perilous position, signaled the engineer to go back; nor that the engineer saw and knew that her son was between the cars, when he moved his engine in response to the signal of the conductor. Each one of these allegations charged gross negligence, and, if sustained by proof, would entitle the plaintiff to recover. The issue of negligence submitted in the former trial, as stated, was, that the engineer was trying to kick the car, and Austin, of his own motion, went between the cars, and the engineer, obviously not knowing that Austin was between the cars, ran over and killed him. This allegation would not entitle plaintiff to recover, but when it is alleged that the deceased, under the orders of his superior who had charge of the train, went to uncouple the car, and that the conductor and engineer, though seeing and knowing that he was in a perilous position, rushed the car upon him, such an allegation, if sustained by proof, presented an entirely different case. Inasmuch as the testimony for the plaintiff upon this subject supported the allegation, it can not be said, as was ruled on the previous record, that the plaintiff failed to sustain her allegations; and as the allegations were different, though the evidence on each trial might be the same, the plea of res adjudicata could not be sustained. For these reasons a verdict should not have been directed, but the issue should have been submitted to the jury.

Some point is made on the fact that the witness McCurdy was impeached, but we can not consider this, nor can the trial judge pass upon the credibility of the witness. It is a matter exclusively for the jury. According to McCurdy's testimony, the conductor ordered Austin to cut off one car; and it was testified, by a number of witnesses, that he could not have done this without going between the cars. According to McCurdy's testimony, the conductor then, without giving Austin time to do the work and get out again, gave the engineer a kick signal, and the engineer, in obe-

dience to the signal of the conductor, rushed the engine back, caught Austin, and killed him. McCurdy was not a witness on the former trial. If the jury had believed the testimony of Mc-Curdy and that portion of the testimony of Huffman in which he testified that he was in charge of the work and ordered Austin to cut off the car, and that Austin could only do this by going between the cars as he did, and that it was always done that way, under the allegations of the petition as amended, the plaintiff's case was established.

Great stress is laid upon the fact that the deceased had signed a receipt for a coupling stick and a copy of the rules of defendant company, and that the deceased was acting in disregard of the rules with which he had admitted he was familiar and which he was obligated to obey; and it is insisted that the evidence upon this subject defeats the plaintiff's right to recover, and that upon that ground the judge was fully authorized to direct a verdict for the defendant. The jury might or might not have taken that view of the case, but certainly it was not within the province of the court, in the then state of the evidence, to determine that the deceased was negligent. It was uncontradicted, in the evidence, that the car which Austin was to uncouple was a car of the Illinois Central Railroad and was not equipped as required by the act of Congress of March 2, 1903, known as the "Safety Appliance Act." The use of this car was not only negligence per se on the part of the defendant company, but, as above stated, the testimony that this car could only be uncoupled in the way in which the deceased was attempting to uncouple it was uncontradicted. Under §8 of the act of Congress above cited, the court could not hold, as a matter of law, that Austin was guilty of such contributory negligence as would defeat recovery in this case. There is no "assumption of risk" on the part of the employee, as to such cars. Schlemmer v. Buffalo, R. & P. Railway Co., 27 Sup. Ct. Rep. 407, (4). Under the evidence, it was for the jury to determine whether the rule which was introduced in evidence had been abrogated or waived by the defendant company. It was held in *Raleigh & Gaston R. Co.* v. *Allen,* 106 *Ga.* 578, that "when an employer defends against an action of tort, brought by an employee . . . , upon the ground that the injury resulted in consequence of a violation of a rule prescribed by the former to govern the

conduct of the latter, it is incumbent upon the defendant to clearly establish by evidence the existence, terms, and conditions of the rule." This is the general rule upon the subject. But even if a rule has been established, if it be violated in practice by servants, with the knowledge and tacit consent of the master or those who represent him, it may be abrogated and waived. *Binion* v. *G. S. & F. Ry. Co.,* 111 *Ga.* 878; *Chattanooga R. Co.* v. *Myers,* 112 *Ga.* 241; *Sloan* v. *Ga. P. R. Co.,* 86 *Ga.* 15; Alexander *v.* L. & N. R. Co., 83 Ky. 590; Barrie *v.* Hannibal R. Co., 98 Mo. 62; L. & N. R. Co. *v.* Reagan, 96 Tenn. 128; 20 Am. & Eng. Ency. L. (2d ed.) 106; 2 Bailey, Pers. Inj. §3378 a. Notice of habitual disregard of the rule may be constructive or presumed. Fish *v.* Ill. C. R. Co., 96 Iowa, 702; L. & N. R. Co. *v.* Reagan, supra; Shear. and Redf. Neg. (5th ed.) 336.

It appears, from the evidence, that the yardmaster, who had charge of the making up of the trains, saw the men habitually disregard the rule, and made no objection. We think that notice to him would be sufficient. The rule forbade brakemen from coupling or uncoupling cars except with a stick, and brakemen and others from going between cars under any circumstances when an engine is attached to the cars. Under the ruling in *R. & D. R. Co.* v. *Bell,* 92 *Ga.* 498, it was the right of the jury to determine whether or not this rule had been abrogated. It is extremely doubtful whether the rule which we have quoted had any application to the facts of the present case, as it does not affirmatively appear that the deceased was a brakeman, and, as said by Chief Justice Bleckley in *R. & D. R. Co.* v. *Mitchell,* 92 *Ga.* 83, there is a presumption that such rules are carefully considered and accurately expressed, and they ought to be construed more strongly against the party who made and adopted them than against one who merely assented to them when they were presented to him as a basis of contract. There may be a difference between a yardman, —"switchman and car-coupler,"—and a brakeman employed to assist in running trains on the line of a railroad; and if there was no rule of the company relating to this matter, the conduct of the employees might be regulated by custom. See *Seaboard Air-Line Ry.* v. *Phillips,* 117 *Ga.* 105, 6. We think that a jury could well have concluded either that there was no expressed rule upon the subject, or, if the rule above quoted applied to the deceased as

.a brakeman, that its observance had been waived by the company, and that it was abrogated so far as the deceased was concerned. ·See L. & N. R. Co. v. Foley, 94 Ky. 220; 7 Am. & Eng. Ency. L. (2d ed.) 1072 d, and note; Pantzor v. Iron Mining Co., 99 N. Y. 372; Brown v. L. & N. R. Co., 111 Ala. 275.

Each one of the considerations to which we have referred affects the subject of negligence, and, as negligence is a question solely for the jury, we do not think that a verdict could have been directed without error.          *Judgment reversed.*