## 1275. CENTRAL OF GEORGIA RAILWAY COMPANY *v.* MOBLEY *et al.,* by next friend.

1. The evidence authorized the verdict, and there was no error in refusing a new trial.
2. The rules of the defendant company were not introduced in evidence. The trial judge properly restricted an instruction which had been requested,—that the plaintiffs could not recover if their deceased father had violated a contract by which he obligated himself, under certain conditions, to release the defendant from all liability,—by adding a qualification in which the jury were instructed to inquire whether the stipulation of the contract by which the defendant sought to relieve itself was inserted for the purpose of bona fide enforcing the rules of the company, or merely for the purpose of avoiding liability which might arise from the violation of a rule, to the non-enforcement of which the company had consented.
3. Proof that an employer, with full knowledge of the continued violation of rules imposed by him for the government of his employees, has acquiesced therein, will authorize the inference that the rule has been abrogated.
4. A corporation knows of the violation of its rules and acquiesces therein whenever the particular agent of the corporation, who is charged with the enforcement of the rule in question, knows of its violation and acquiesces therein. The knowledge of the agent is the knowledge of the corporation; and though it is the duty of the inferior agent, charged with the enforcement of a rule, to inform his superior thereof, a breach of this duty can not affect the rights arising from his knowledge that the rule is being violated.

Action for damages, from city court of Americus—Judge Crisp. May 14, 1908.

Argued October 27, 1908.—Decided April 15, 1909.

*E. A. Hawkins, J. B. Hudson,* for plaintiff in error.

*J. A. Hixon, Shipp & Sheppard,* contra.

RUSSELL, J.   The assignments of error contained in the several grounds of the motion for new trial really present but four points,—the sufficiency of the evidence; the right of an employee to rely for guidance upon the orders of his superior officer; the abrogation of the rules of a carrier by non-user; and the question, to what officer of a railroad company must the knowledge of a uniform disregard of its rules be brought, to effectuate an abrogation of the rules?

1.   Upon the point as to the sufficiency of the evidence, it appears, from the testimony in behalf of the plaintiffs, that their father was engaged by the defendant company as a switchman in its yards in the city of Americus.   On the occasion when he met his death he was assisting in the shifting of certain freight-cars. The yard-master was temporarily absent, but in his absence the head switchman took his place and directed the shifting of the cars.   Plaintiffs' father was ordered by the head switchman to go in between two cars while the engine was attached to them. After uncoupling the cars as directed, the deceased gave a signal, which was repeated to the engineer by the acting yard-master. Instead of obeying this signal, the engineer backed the train of cars down toward the deceased, whose foot got fastened in the switch-frog, and, although he made efforts to extricate himself, he was run down by the heavily-loaded cars, and was so mangled that he died a very few moments afterwards.   The witnesses for the defendant did not unequivocally deny that in the absence of the yard-master, Mr. Johnson, the head switchman had authority to direct in the shifting and making up of trains.   But the defendant relied upon a contract signed by the deceased, in which he stated he knew that the rules of the company forbade his getting between cars while they were in motion, or even while the cars were standing still, if the engine was attached to them.   No rule of the company was introduced in evidence, and the deceased's understanding of the rule mentioned in the contract, to which reference has just been made, as stated by the yard-master himself when upon the stand, was that, while he was forbidden to go between moving trains for any purpose, he was not forbidden to go between two cars for the purpose of coupling or uncoupling, if the train was standing still, although the cars were attached to the engine.

The case, as presented by the plaintiffs, was one in which an employee was directed by his superior officer to do what he had contracted not to do, and, while engaged in executing these orders, was killed without fault upon his part, unless the jury had inferred that, by the exercise of ordinary care, he could have prevented his foot from being caught in the switch-frog. And even upon this latter point there was evidence that the railroad company omitted to provide the frog with a block. The question was not whether the deceased had violated any of the printed rules of the company (for there is no evidence that he had ever seen a printed copy of the rules, or that any such are furnished to the employees of this defendant), but whether, by the violation of his contract, the plaintiffs are inhibited from recovering for his death. The jury would have had as much right to infer that the deceased received his knowledge of the rules which he bound himself to obey, from the verbal explanation of the yard-master and the construction placed by that officer upon the rules, as to infer that he had been provided with a copy of the rules, and derived his knowledge from their printed contents. The evidence authorized the jury to find that the contract did not defeat the power of the deceased's superior officer to order, nor the right of the deceased to obey instructions of this superior officer; or to find that even if the rules were known by the deceased not to be subject to the construction placed upon them by his supposed superior officer, the rule, if such existed, had been abrogated by custom and with the acquiescence of the defendant. This being true, the verdict in favor of the plaintiffs is authorized by the evidence, and a new trial was not required, unless the finding was induced by an error of law on the part of the court.

2. We come then to consider whether the court should have qualified the defendant's request to charge, by the modification of which complaint is made. In this qualification the court submitted to the jury the question as to whether the stipulation of the contract which referred to the rule was made in good faith by the company, with the intention that the rule should be enforced, or whether the stipulation was an unreasonable and impossible one, not made in good faith, but for the purpose of contracting against any liability which might arise against the defendant and in favor of the employee. For the reasons stated in

*Austin* v. *Central Ry. Co.,* 3 *Ga. App.* 775 (61 S. E. 998), we think the modification and qualification which the judge placed in the requested instruction was appropriate and proper. The judge charged the jury, as requested, that if they believed from the evidence that the deceased, by contract, obligated himself not to go between cars while they were attached to an engine, and agreed to release and relieve the defendants from all liability for damages for any injury occurring to him while he should be between the cars so attached to the engine, and that he was thus injured, and died from the injuries thus received, then his children could not recover damages for the homicide; but added, "If you deem that a reasonable rule and requirement was made in good faith by the company, and intended to be used and enforced by the defendant company, then it would be binding. On the contrary, if it was an unreasonable and impossible rule, and not made in good faith, not intended to be enforced, but made for the purpose of contracting against any liability that might arise against the defendant in favor of the employee, then it would be contrary to public policy, and would not be binding, but would be null and void." The judge charged further: "If that contract was a reasonable one and bona fide, and intended to be enforced at the time, and not made for the purpose of defeating any liability that might arise under the contract, and he was injured, and died from injuries thus received, then his children could not recover damages for his homicide, under such circumstances." The charge of the court was really more favorable to the defendant than it was entitled to, inasmuch as no rules were put in evidence, and for this reason the court was not required to determine whether any rule of the company was reasonable or unreasonable. The only question before the jury, under the evidence, was whether the stipulation of the contract was an unreasonable or impossible one; and as, in this instance, the determination of this inquiry must depend upon pure questions of fact, we think it was properly submitted to the jury to say, from the evidence, whether it was unreasonable to require the deceased, as a switchman, not to go between cars, if it otherwise appeared, from the evidence, that it was a practice well-nigh universal for switchman to go between cars. And it certainly was a question for the jury (if they found the stipulation of the contract to be unreasonable) to determine, from the evidence

upon that subject, whether the rule, if such existed, was so generally disregarded that the stipulation in the contract was a mere subterfuge to avoid liability.

3. As we held in the *Austin* case, supra, a rule adopted by a corporation (or any employer for that matter) for the government of employees may be suspended or abrogated by continual acquiescence in their violation of the rule, on the part of officials charged with its enforcement, with full knowledge of the fact that the rule in question is being generally disregarded by the employees. The trial judge did not err in his instruction upon this subject, and the evidence was ample that if there was a rule requiring those employees who were engaged in coupling and uncoupling cars not to go in between cars while the engine was attached to them, the rule was more honored in the breach than in its observance.

Plaintiff in error claims that the court could not properly have instructed the jury to consider the good faith of the defendant, and its intention in taking the contract; for the reason that there was no evidence to authorize such a charge. We think the apparent disregard of the company's regulation furnished circumstantial evidence, which might be considered by the jury, as well as direct evidence; and if the knowledge of this disregard was brought home to the defendant, it would be fair to infer that the company had no intention of enforcing the rule it is assumed to have adopted, and that the company itself regarded it as unreasonable and incapable of enforcement. A fact may be proven by circumstantial as well as by direct evidence; and *intention* and good faith, as facts, are not usually susceptible of any other kind of proof than that which may be deduced from circumstances.

4. It is insisted, however, that for the company to have such knowledge of the general disregard of its rule as that it can be inferred that it has acquiesced in the abrogation of the rule, knowledge of the general disregard of the regulation must be brought home to the president, general manager, or directors of the corporation. We do not agree to the statement as thus broadly made. It is true that the company must first know that its rules are being disregarded, and thereafter acquiesce in the disuser or non-user of its regulations, before it can be said that it has consented to the abrogation of a rule and waived its enforcement, as

well as waived any rights which might accrue to it by the terms of the rule; but it is not essential that knowledge of consent to the abrogation of the rules of a corporation should be brought home to its official head. Corporations, being artificial persons, act only through their agents, and they gain information only in this way. It is sufficient, therefore, so far as the rights of any particular person are dependent upon the existence or the non-existence, or waiver, of a corporate regulation, if the corporation's agent, charged with the enforcement of a particular regulation at a particular place, waives the rule or consents to its abrogation. As such agent, and being required to enforce the rule, it would be within the scope of his authority, so far at least as an employee who works under his direction is concerned, to waive the enforcement of the rule. We think, therefore, that the court properly refused to instruct the jury that "yard-masters, switchmen who act as yard-masters or as switchmen, conductors, engineers, or agents at certain stations, are not officers of the railroad company, and are not such superior officers of the company as to whom knowledge of continued violations of rules will be presumed, so as to abrogate the rule or rules, or to set aside a contract made by an employee."

The fifth ground of the amended motion is not approved by the trial judge, and is, therefore, not considered. Another ground depends upon the erroneous assumption that the rule of the company had been put in evidence, and was, therefore, properly overruled.                                    *Judgment affirmed.*