### 3246.　LOUISVILLE & NASHVILLE RAILROAD CO. *et al.* v. HUDSON.

1. A railroad company is not liable in damages for a homicide committed by an employee, where the homicide was not committed in the prosecution of its business and within the scope of his employment, but was his personal act in resenting a real or fancied insult.
2. Where the act of the employee in committing the homicide was one for which the master was not responsible, because it was an individual personal act of the employee, not within the scope of his employment, the fact that the employee was of high and ungovernable temper and habitually carried a pistol would be wholly immaterial and irrelevant. The test for determining a master's liability for an act of the servant is not the servant's bad disposition or vicious habits, but whether the act was within the scope of his employment and was connected with the prosecution of the master's business.

DECIDED DECEMBER 19, 1911.

Action for damages; from city court of Richmond county— Judge W. F. Eve.　February 9, 1911.

Hudson was a night yard-conductor of the Charleston & Western Carolina Railway Company, whose duty it was, among others, to receive cars delivered by a connecting carrier to the railroad. Jackson was a night engineer, employed by the defendant railroad companies, to wit, the Louisville & Nashville Railroad Company

and the Atlantic Coast Line Railroad Company, as lessees, and it was his duty among others, to deliver the cars of his employer to the Charleston & Western Carolina Railway Company. On November 1, 1909, at night, Jackson, in the discharge of his duties, delivered 23 cars to the last-named company in its yards in Richmond county. When Jackson and his crew reached the yards for the purpose of making a delivery of these cars, he asked Hudson where he wanted the cars placed, and Hudson replied, "On track No. 1." When Jackson called the switchman on that track, Hudson signaled Jackson to stop, whereupon the conductor who was with Jackson and his crew signaled Jackson to go ahead, and Jackson endeavored to move the line of cars. He could not move them, and, seeing that he could not do so, requested his fireman to get down and help him find out the trouble, and both Jackson and his fireman got down off the engine, and began to inspect and examine the cars for the purpose of finding out the trouble. They claimed that the air was "cut out," and Jackson accused Hudson of cutting it out. Hudson replied that he knew nothing of it, and that, if Jackson said that he did it, he lied. Immediately Jackson jumped on his engine, got a revolver out of his box, and wrongfully, willfully, and unlawfully shot Hudson, killing him almost instantly.

Suit was brought to recover for this homicide, on two grounds: (1) That Jackson, in committing the homicide, was acting within the scope of his duty as the agent of his employer, the railroad company, and that the act was committed by him while he was in the actual performance of and in connection with the discharge of his duties as such employee, and therefore that the defendants were responsible for this tort of their agent; and (2) that Jackson was an unfit and improper person to act as an engineer; that he habitually carried a pistol while on duty, had an ungovernable temper, and was an incompetent man to discharge the work of an engineer, was a dangerous man, who was apt to use his pistol without provocation or justification, and did use it many times while in the employ of the defendants, and these facts were fully known to the defendants who, notwithstanding, employed him and continued to keep him in their employment. A general demurrer filed to the petition was overruled, and the case came to this court on exception to that judgment.

*Joseph B. & Bryan Cumming, J. M. Hull Jr.,* for plaintiffs in error.

*A. L. Franklin,* contra.

HILL, C. J. (After stating the foregoing facts.) The courts generally have found some difficulty in holding the master liable for a homicide intentionally committed by his servant, in the absence of any express command on the part of the master, and the majority of adjudications seem to favor the theory that in the absence of express authority the master is not liable in damages for a deliberate, intentional, and wilful homicide committed by his servant. 1 Thomp. Neg. § 571. But, whatever may be the adjudications in other jurisdictions on this subject, it is settled by the statute law of this State that the master would be liable where the homicide was committed by the servant in the prosecution and within the scope of the master's business, whether it was actually committed by the command of the master, or was the result of negligence on the part of the servant, or his voluntary act.

The Civil Code, § 4413, provides that every person shall be liable for torts committed by his servants by command, or in the prosecution or within the scope of his business, whether the same be by negligence, or voluntary. And section 2780 declares that a railroad company shall be liable for damage done by any person in the employment or service of such company, unless the company shall make it appear that their agents were in the exercise of reasonable care and diligence, the presumption in all cases being against the company. A corporation, under the law, is a "person," in the meaning of the first section quoted; and the terms of the section apply to corporations as well as to natural persons, and the principle of law there announced is well settled by the adjudications of the courts. The difficulty is in the application of the general principle of law to the particular facts. In the great multitude of decisions made by the courts, applying the facts of the cases to the principle of law just announced, there is found much diversity of opinion and room for doubt; and, after all, the solution of the question is to be determined largely by the facts of each particular case, aided by the very best judgment of the court in making the application of the principle to those facts.

The master is not an insurer against wrongs perpetrated by his servants. It would be unjust to hold him responsible for these

wrongs, unless they were done by the servant while he was in the performance of the master's business and was acting within the scope of his employment. The rule of liability in the case is based upon the old maxim, "Qui facit per alium facit per se," and if the servant, instead of doing that which he is employed to do, does something which he is not employed to do at all, and the act is not properly within the scope of his employment, it can not be said that the master does the act by his servant. Mr. Thompson, in his work on Negligence (section 526), lays down the test by which to determine whether a servant acts within the scope of his employment. "The test is not that the act of the servant was done during the existence of the employment,—that is to say, during the time covered by the employment,—but whether it was done in the prosecution of the master's business; whether the servant was at that time engaged in serving his master; for, if the servant steps aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended, and the servant alone is responsible for his act committed by him during this period." In the case of *Savannah Electric Co.* v. *Hodges*, 6 *Ga. App.* 470 (65 S. E. 322), Judge Russell, speaking for this court, quoted approvingly the foregoing test of liability of the master for the servant's act, and held that "if the servant steps aside from his master's business, for however short a time, to do an act entirely disconnected from it, and injury results to another from such independent voluntary act, the servant may be liable, but the master is not liable."

The decision of this court in the case just cited would seem to control the case now under adjudication, for the facts of the two cases are not so different as to afford substantial room for any different application of the rule of law. The question here to be decided, under this rule of law, is whether the killing of Hudson by Jackson was done by Jackson in the prosecution or furtherance of his employer's business, or whether in the killing Jackson turned aside from his master's business and committed an act wholly disconnected therefrom, and for the consequences of which he, and not his master, would be liable. While repeated adjudications in analogous cases leave the solution of this question not entirely free from doubt, still it seems to us, restricting our view to the facts

of this transaction, and not looking beyond, or permitting ourselves to become perplexed in the maze of contradictory rulings, that we should adopt, as the most reasonable conclusion, the view that when Jackson committed this homicide he had turned aside for that purpose from his master's business and was engaged in his own personal matter. Jackson made against Hudson, an implied accusation of improper conduct. Hudson resented this accusation by in effect denouncing Jackson as a liar, and Jackson immediately ran to his box on the engine, secured his pistol, and instantly shot and killed Hudson. He shot Hudson, because Hudson called him a liar. It was to resent what he deemed a personal insult. He did not shoot and kill Hudson because in his opinion Hudson had been guilty of cutting off the air-brakes and thus interrupting him in the proper discharge of his official work; and, even if he had done this, it is not clear that the master would have been liable. The killing was due solely to an insulting epithet used by Hudson. Jackson was acting for his master in delivering the cars to the Charleston & Western Carolina Railway Company, and if Hudson had interfered with this work, and Jackson had resented such interference, and made an assault and battery, or killed Hudson for such interference, it might be claimed that the tort was committed by Jackson in connection with his master's business; but it can not be doubted that the killing of Hudson was due solely to the insulting epithet, and that but for it the homicide would not have occurred. If the truth of this proposition is not sufficiently apparent from the mere statement of the facts, we are sure it can not be rendered any more manifest by argument, or by citation of authority. We therefore do not deem it profitable to extend the discussion on this point. See *Henderson* v. *Dade Coal Co.*, 100 *Ga.* 568 (28 S. E. 251, 40 L. R. A. 95).

The cases relied upon by counsel for the defendant in error— *Savannah Electric Co.* v. *Wheeler*, 128 *Ga.* 550 (58 S. E. 38, 10 L. R. A. (N. S.) 1176), and *Mason* v. *Nashville, Chattanooga & St. Louis Ry.*, 135 *Ga.* 741 (70 S. E. 225, 33 L. R. A. (N. S.) 280)—are distinguishable by their facts from the present case. Both of these were cases of passengers, where the rule of extraordinary diligence applies, and the master is under a duty through his agents of personally protecting the passenger from any insult, either by one of his own employees or by third persons. In the

*Wheeler* case the conductor drew a pistol and fired at a passenger, missing the passenger and killing an innocent woman passing on a public street through which the car was running, because the passenger had asked the conductor for his change. ' The Supreme Court held that this tort of the conductor was within the scope of his business in collecting fares. In the *Mason* case the passenger was drunk and disorderly, and used foul and abusive language to the conductor, which brought on a difficulty, and the conductor was in the discharge of his duty in attempting to eject the disorderly passenger. The case was decided in favor of the company by the lower court, and the Supreme Court granted a new trial on a ground not involving the question in the present record. Mr. Justice Lumpkin, in the opinion in the *Mason* case, reviews many previous decisions of the Supreme Court relating to the liability of railroad companies for the conduct of their employees, and modifies to some extent the rulings previously made, but there is nothing in the opinion in support of the proposition that the master in the present case was liable for the act of the engineer in killing the decedent.

If the act of the engineer in the present case was, as we have held, his personal act, and not one for which the master was responsible, it would be wholly immaterial, on the question of the master's liability, whether the servant was of ungovernable temper, or habitually carried a pistol while on duty. If the master was liable because the act was performed by the servant within the scope of his employment, the employee's temper or unfitness, and the fact that he carried a pistol with the master's knowledge, might be circumstances to be considered on the question of exemplary or punitive damages; but these facts of themselves can not make the master liable for an act done by his servant outside the scope of his employment and for which the master is not otherwise responsible. In other words, we do not think that the fitness, or the temperament or disposition, of the employee, and his private habits, are material facts to be considered, except on the question of aggravation, where the master is otherwise liable for the act of the servant.

For the foregoing reasons, we think the demurrer to the petition should have been sustained by the lower court.

*Judgment reversed.*