34677. POPE *v.* SEABOARD AIR LINE RAILROAD COMPANY *et al.*

DECIDED JULY 14, 1953.

**560**

*Dudley Cook, Lewis & Lewis,* for plaintiff in error.

*MacDougald, Troutman, Sams & Schroder, Neel & Ault,* contra.

SUTTON, C. J. ■ Code § 105-108 provides as follows: "Every person shall be liable for torts committed by . . . his servant, by his command or in the prosecution and within the scope of his business, whether the same shall be by negligence or voluntary." As construed in *Frazier* v. *Southern Ry. Co.,* 200 *Ga.* 590, 593 (37 S. E. 2d 774), "The word 'voluntary' in § 105-108 will cover any or all motives or purposes of the wrongdoer,. acting in the scope of his employment, which are not covered by 'acts of negligence.' The true test is not whether the tort was committed by reason of anger, malice, or ill will, but whether or not it was committed in the prosecution and within the scope of the master's business. If the tort be committed, not by reason of the employment, but because of matters disconnected therewith, the master would not be liable." As stated in *Southern Railway Co.* v. *James,* 118 *Ga.* 340, 344 (45 S. E. 303, 63 L.R.A. 257), "If the criminal act of the servant was done within the range of his employment and for the purpose of accomplishing the authorized business of the master, the latter is liable."

In the present case, it is alleged that Davis, while employed as a detective and investigator by the defendant railroad company, went to the plaintiff's house at night on the railroad's business, to make a routine investigation of an applicant for a job. For reasons which are not alleged, Davis was unable to

drive back to the hotel where he was staying, and it became necessary for the plaintiff's husband to drive him back. The plaintiff's husband parked Davis's car in front of the hotel and went around the car to assist Davis into the hotel. Before Davis got out of the car, he shot the plaintiff's husband, and was then "acting for and on behalf of his employer . . . and within the scope of his employment." No altercation or fight had taken place.

It appears that Davis became so incapacitated that he was unable to drive his car back to the hotel and required assistance to get out of his car when he got there. Apparently he was able to drive to the plaintiff's house. These facts plainly show that Davis's mission for his employer, to acquire information about a job applicant, had either been accomplished or could be pursued no further by the time Davis shot the plaintiff's husband, and that the shooting was not done in the prosecution of any railroad business. Although Davis was alleged to have been employed as a detective and investigator, there was nothing in the nature of his transaction with the plaintiff's husband which would require the use of force, and it is not shown how the use of a pistol had any connection with the business which Davis had transacted with the plaintiff's husband. See *Ford* v. *Mitchell*, 50 *Ga. App.* 617 (2) (179 S. E. 215); *Georgia Power Co.* v. *Shipp*, 195 *Ga.* 446 (24 S. E. 2d 764).

It is contended that the shooting of the plaintiff's husband was done within the scope of Davis's employment, as his employment was general in nature, his hours of work were indefinite, and he traveled from place to place on an expense account. But the question is not whether the tort occurred during the time of Davis's employment; it is whether the wrongful act, at the time of its commission, was so closely connected with an authorized transaction that the act may be said to have been done in the prosecution of the employer's business and not as an act wholly personal to the employee. *Plumer* v. *Southern Bell Tel. &c. Co.*, 58 *Ga. App.* 622 (199 S. E. 353); *Falls* v. *Jacobs Pharmacy Co.*, 71 *Ga. App.* 547 (31 S. E. 2d 426). There is no such connection shown here; but the specific averments of the petition show that Davis was not, when he shot the plaintiff's husband, acting in the prosecution and within the scope of the railroad's business.

■ The second count of the petition is not brought on the theory that an employer is liable for torts committed by its servant while in the prosecution of the employer's business, but is brought on the basis of the employer's negligence in retaining in its employment and furnishing a pistol to an employee who was of a violent and ungovernable disposition, with a propensity to assault others without cause, and who was a chronic alcoholic, constantly under the influence of alcohol and frequently intoxicated, the employer having knowledge of these traits. The allegations of Davis's alcoholism must be disregarded, for the pleader has studiously avoided making any allegations that Davis had been drinking or was under the influence of alcohol when he shot the plaintiff's husband; and the employer's liability in this respect is limited to those consequences flowing directly from the known incompetence or bad character of its servant. *Camilla Cotton Oil &c. Co.* v. *Walker*, 21 *Ga. App.* 603 (9) (94 S. E. 855); *Parry* v. *Davison-Paxon Co.*, 87 *Ga. App.* 51, 56 (3) (73 S. E. 2d 59).

If, as alleged, the defendant railroad company had knowledge of Davis's character and disposition to assault others without cause, but nevertheless retained him as an armed detective and investigator, a jury might find that the railroad had good reason to anticipate and apprehend that Davis would conduct himself in the manner alleged while making his investigations. It is alleged that Davis was on his employer's business when he called upon the plaintiff's husband, and this contact in line of business would authorize a jury to consider the subsequent shooting as a result of Davis's employment by the defendant railroad company. Although the plaintiff's husband is alleged to have been employed as a flagman by the same railroad, it appears that he was off duty and so was not a fellow-servant of Davis; and while it is not alleged that he was unaware of Davis's propensities, neither is it alleged that the deceased had knowledge of his character. It was Davis who came uninvited to the plaintiff's house on railroad business, and so it would be for a jury to say whether or not the plaintiff's husband could have avoided being shot by him.

As stated in *Christian* v. *Columbus &c. Ry. Co.*, 79 *Ga.* 460, 462 (7 S. E. 216): "But this declaration alleges that the rail-

road company employed him knowing of his infirmity, and that, of course, subjects the company to the consequences, if it be true. Their employment of an improper person to come in contact with the public as their agent, would be gross misconduct." And it was ruled in *Renfroe* v. *Fouché, 26 Ga. App.* 340 (3) (106 S. E. 303): "Where a servant departs from the prosecution of his business and commits a tort while acting without the scope of his authority, the person. employing him may still be liable if he failed to exercise due care in the selection of his servant." Also see, in this connection, *Savannah Electric Co.* v. *Wheeler,* 128 *Ga.* 550, 562 (3) (58 S. E. 38, 10 L.R.A. (N.S.) 1176); *Estridge* v. *Hanna,* 54 *Ga. App.* 817 (2) (189 S. E. 364); *Henderson* v. *Nolting First Mortgage Corp.,* 184 *Ga.* 724 (2) (193 S. E. 347, 114 A.L.R. 1022); *Elrod* v. *Ogles,* 78 *Ga. App.* 376, 384 (2 b) (50 S. E. 2d 791); Code § 66-301. The second count of the petition set out a cause of action against the defendant railroad company.

■ Accordingly, the court did not err in sustaining the general demurrer of the defendant railroad company to the first count of the petition, but should have overruled the railroad's general demurrer to the second count.

*Judgment affirmed in part and reversed in part. Felton and Worrill, JJ., concur.*