40685.   CORUM, By Next Friend v. EDWARDS-WARREN
TIRE COMPANY et al.

PANNELL, Judge.   James Edward Corum, by next friend, sued
Edwards-Warren Tire Company and John Thomas Smith and
Raymond H. Swanson seeking to recover damages arising out
of a collision between a parked truck, owned by the company
and parked by Smith, and a truck driven by Swanson in
which latter truck the plaintiff was a passenger.   The com-
pany made a motion for summary judgment (*Code Ann.*
§ 110-1201, et seq.) attaching thereto an affidavit of the shop
superintendent of the defendant company to the effect that
Smith was employed as a tire recapper and was never re-
quired to drive a truck and was not authorized to drive any
of the defendant company's vehicles, and that at the time of
the collision Smith was not on any business for the defendant
company and was using the truck without permission for his
own benefit.   Plaintiff in response produced an affidavit of
Smith in part as follows: "On January 11, 1963, I started
work in the plant at 5 p.m. and worked all night.   While
working that night, I received a call at the plant from my
mother-in-law at about 12 midnight and she said my wife was
sick.   I thought I would wait until I got off the next morning
before going to see about her but my mother-in-law called
again about 6 a.m. and said my wife was worse.   The man
who was in charge was a white man, but I do not recall his
name.   I explained to the foreman that my wife was sick
and I told him I was going to use one of the trucks to go see
about her.   He said it was all right for me to use the truck.
I was intending to go see about my wife then go back to the
plant and work some more.   I took one of the large G. M. C.
trucks, about a five-ton truck, and went over to my mother's-
in-law house to see my wife.   Prior to the accident on January
12, 1963, I had used company trucks on several occasions for
personal purposes.   Mr. Hutchinson, who was shop foreman
at Edwards-Warren for about five years, let us use the trucks
whenever we needed them.   If he wasn't around when we
needed a truck for personal reasons, we would go ahead and
use the trucks then tell Mr. Hutchinson later.   Mr. Hutchinson
left the company about one month before I started back the
last time.   I was not told by anyone that the rules for using

company trucks had changed since Mr. Hutchinson left. The day of the accident, January 12, 1963, was the first time I had used a company truck for personal reasons since I had come back to work for them. I would not have used the truck on the day of the accident if the foreman had said it was not all right with him. Before I left to go to my mother's-in-law, he said to go ahead and take the truck and hurry back. The Monday following the accident when I returned to work, I was called into the office and I talked with an insurance man with Edwards-Warren Tire Company. He asked me if I had permission to use the truck, and I said 'No' because I was afraid I would get the foreman in trouble for giving me permission." The trial court sustained the motion for summary judgment and plaintiff assigns error thereon in a bill of exceptions to this court. *Held:*

1. "To hold a master liable for a tort committed by his servant, it must appear that at the time of the injury the servant was engaged in the master's business and not upon some private and personal matter of his own; that is, the injury must have been inflicted in the course of the servant's employment." *Wilson v. Quick-Tire Service,* 32 Ga. App. 310, 311 (123 SE 733). "The test is not that the act of the servant was done during the existence of the employment, but whether the servant was at that time serving the master. *L. & N. R. Co. v. Hudson,* 10 Ga. App. 169, 172 (73 SE 30)." *Cooley v. Tate,* 87 Ga. App. 1, 6 (73 SE2d 72).

2. The mere fact that the employee at the time was using the defendant company's truck is not sufficient to authorize a finding that the employee in using the truck for the purpose of going to his home and seeing his sick wife was acting in and about the business of his employment. While it appears that a jury question might have been made on the question of permission, yet, construing the evidence most strongly in favor of the plaintiff, it failed to authorize a finding that the employee's permissive use of the car on a personal errand was also on the business of the master. See *Stenger v. Mitchell,* 70 Ga. App. 563, 566 (28 SE2d 885).

3. In *Davies v. Hearn,* 45 Ga. App. 276, 278 (2) (164 SE 273), the ruling involved a deviation and a return therefrom by one employed to drive a truck and who had authority as a condition of employment to use the truck in going to and from work, it appearing without dispute that this was the employee's

daily custom which was expressly approved by the employer. A similar situation existed in *Causey v. Swift & Co.*, 57 Ga. App. 604 (196 SE 228). In *American Hdw. Mut. Ins. Co. v. Burt*, 103 Ga. App. 811, 815 (120 SE2d 797), it was held, "An agreement that the employment relationship shall continue during the period the employee is going to and returning from work may be inferred from the fact that transportation is furnished by the employer as an incident thereof," whereas, in the present case it is contended there is an inference that the transportation furnished by the employer to the employee for a personal errand was an incident of the employment. In *Starr &c. Lumber Co. v. York*, 89 Ga. App. 22, 28 (78 SE2d 429), there was direct testimony by the employer that there was a custom of furnishing transportation to employees for taking firewood from the place of employment to their homes for the purpose of keeping the employees satisfied. No inference was involved in that case. In *F. E. Fortenberry & Sons v. Malmberg*, 97 Ga. App. 162 (2) (102 SE2d 667), the case turned on the point that the permission given the employee to take scrap lumber home was sufficient to place him within his employment in doing so for the reason that the employer was going to burn the scrap lumber or otherwise dispose of it, the court saying, "The proof of the facts above referred to [on previous occasions of permitting employees to take scrap lumber home in employer's vehicles] unexplained by the defendant's testimony was sufficient to support the inference that the scrap lumber that was being hauled by the defendant was refuse or at the least that the defendant desired to remove it from the lumber yard in order to be rid of it." The additional ruling in that case that "from the testimony of both the defendant manager and driver the inference was warranted that the scrap lumber was given to the driver and he was allowed to carry the same to his home on the defendant's truck for the purpose of engendering good managerial and labor conditions between the defendant and the driver," is unsupported by the authority cited in support thereof, *Starr &c. Lumber Co. v. York*, 89 Ga. App. 22, 28, supra, and is hereby disapproved.

4. Upon application of the foregoing rulings as to the facts in the instant case, it appears that the trial court did not err in granting the summary judgment in favor of the defendant employer.

36

*Judgment affirmed. Felton, C. J., Nichols, P. J., Bell, P. J., Frankum, Hall, Eberhardt and Russell, JJ., concur. Jordan, J., dissents.*

DECIDED JULY 2, 1964.

*Hewlett & Ward, Florence Hewlett Dendy,* for plaintiff in error.

*Lokey & Bowden, Glenn Frick,* contra.