42734.   AMERICAN OIL COMPANY v. McCLUSKEY et al.

DECIDED MARCH 17, 1969—REHEARING DENIED APRIL 4, 1969—

*Edwards, Bentley, Awtry & Parker, A. Sidney Parker, Scott S. Edwards, Jr.,* for appellant.

*Mundy, Gammage & Cummings, William W. Mundy, Raymond M. Reed, Harl C. Duffey, Jr.,* for appellees.

QUILLIAN, Judge. 1. This court's judgment in *American Oil Co. v. McCluskey,* 118 Ga. App. 123, supra, having been reversed by the Supreme Court, *McCluskey v. American Oil Co.,* 225 Ga. 63, supra, the judgment is vacated.

2. The defendant contends the trial judge erred in overruling the motion for judgment notwithstanding the verdict, motion for summary judgment, motion for directed verdict and motion for new trial on the general grounds. The defendant insists that the evidence in support of the summary judgment and submitted upon the trial did not authorize the finding that the plaintiff was entitled to recover damages of the defendant for the death of her son, an employee of the defendant, whose death was alleged to have resulted from the negligent act of a fellow servant. The fellow-servant rule was not invoked as a defense, obviously because the deceased was only twelve years old, and the doctrine was not applicable. *Union Cotton Mills v. Harris,* 144 Ga. 716 (2a) (87 SE 1029).

The defendant insists that the evidence failed to establish liability on its part because, according to the proof submitted: (a) acts of the defendant's servant, which caused the fatal injury to the deceased, were not committed while in the prosecution of the defendant's business, but occurred when the servant had stepped aside from his employment and was engaged in acts wholly personal to himself; (b) the defendant did not have knowledge prior to the tragic event that its servant, whose alleged negligence caused the injury fatal to the deceased, carried the pistol when engaged in the duties of his employment or that he drank intoxicating liquors; (c) the deceased's death resulted from a sheer accident. We have examined each of these contentions in the light of the evidence adduced upon the trial.

(a) The defendant's invocation of the time-honored rule that where a servant departs or steps aside from his employment and commits an act entirely personal to him, his master is not responsible for the consequences of such an action raises a grave question. See in this connection *American Security Co. v. Cook,* 49 Ga. App. 723 (176 SE 798). The evidence was that the de-

fendant's servant, Mr. Disharoon, carried the pistol from which the fatal shot was fired for the dual purpose of defending himself and protecting certain money and other property entrusted to his care by the defendant. He related instances which appeared to make the possession of the pistol expedient in carrying out the purpose of his employment. He denied he had ever been instructed not to carry the pistol, and testified that on one occasion while he and his superior, or supervisor, were together in a motel while engaged in the defendant's service, his superior saw him remove the pistol from his suitcase. Hence, his superior had knowledge that he carried the same while performing the duties of his employment. The witness further testified that he brought the pistol into the service station where the deceased was shot for the purpose of cleaning the weapon. The cleaning of the pistol was incidental to, and a part of, the act of carrying it. *Employers Liability Assur. Corp. v. Henderson,* 37 Ga. App. 238 (3) (139 SE 688).

The act of a servant may be within the scope of his employment, though not done at the master's direction, or with his permission and even if his master does not know the act is being committed. The test is whether the act is done by the servant in connection with the master's business and for the purpose of promoting the master's interest. It is not necessary that the thing done be wise or even beneficial to the master, provided the servant's purpose is to benefit the master. "The crime committed by the servant was in his injudicious attempt to execute this lawful authority in an unlawful manner. It was the means adopted by the servant for the purpose of performing the authorized work of the master. The civil liability of the master is not affected in such a case by the fact that the servant has rendered himself criminally liable. If the criminal act of the servant was done within the range of his employment and for the purpose of accomplishing the authorized business of the master, the latter is liable." *Southern R. Co. v. James,* 118 Ga. 340, 344 (45 SE 303, 63 LRA 257).

In *Fielder v. Davison,* 139 Ga. 509, 511 (77 SE 618), it is held: "Omitting the fellow-servant doctrine, the general rule is that a master is liable for the tort of his servant, whether negli-

gent or voluntary, if done by his command or in the prosecution and scope of his business. Civil Code, § 4413. The expressions, 'in the scope of his business,' or 'in the scope of his employment,' or similar words, have sometimes been given too narrow a meaning. A master rarely commands a servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort; but if the act is done in the prosecution of the master's business, that is, if the servant is at the time engaged in serving the master, the latter will be liable. *Savannah Electric Co. v. Wheeler*, 128 Ga. 550, 553, et seq. (58 SE 38, 10 LRA 1176)."

The principle is splendidly treated in the text of 35 AmJur 987, Master and Servant, § 553. "A servant is acting within the scope of his employment when he is engaged in doing for his master what he has been directed to do, or, as it has been said, 'any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act, or a natural, direct, and logical result of it' is within the meaning of the phrase 'scope of employment.' The test is the nature of the tortious act and its relation or nonrelation to that which the actor was employed to do. If the employee, being engaged about the business of the employer, adopts methods which he deems necessary, expedient, or convenient, and the methods adopted prove hurtful to others, the employer may be held liable. The purpose of the employee's act, rather than the method of performance thereof, is said to be the important consideration. Liability on the part of the employer is not limited to the employee's acts which promote the objects of the employment, the general idea being that in order to fix liability on the employer, the employee at the time of doing the wrongful act must have been acting in behalf of the employer, and not on his own account."

The wise pronouncement of *Prince v. Brickell*, 87 Ga. App. 697, 700 (75 SE2d 288) is: "Nor does it matter that the killing of the plaintiff's husband was not beneficial to the defendant. . . . And, 'If the criminal act of the servant was done within the range of his employment and for the purpose of accomplishing the authorized business of the master, the latter is liable.'"

Also refer to the case of *Frazier v. Southern R. Co.*, 200 Ga. 590, 594 (37 SE2d 774).

So regardless of whether the servant, Mr. Disharoon, carried the pistol without the defendant's knowledge and without any direction or permission to carry it, his carrying and cleaning the weapon must be held to be within the scope of his employment.

Moreover, according to Mr. Disharoon's testimony, which was undisputed, knowledge of his superior employee concerning the practice of carrying the pistol was chargeable to the defendant. In this connection refer to 35 AmJur 559, Master and Servant, § 129, and p. 447, § 4. Also Hale v. Depaoli, 33 Cal. 2d 228 (201 P2d 1, 13 ALR2d 183). This is under a doctrine similar to those applicable to principal and agent. This court held in *Prince v. Brickell*, 87 Ga. App. 697, 700, supra, there is no difference in applying the rule relative to respondeat superior in cases of master and servant and cases of principal and agent. Both hinge upon the knowledge imputable to the master or principal. Where the master, as in the present case, had knowledge that a servant pursues a given course of conduct and takes no steps to prevent such conduct, he is liable for its consequences. The holding of *Atlantic C. L. R. Co. v. McLeod*, 9 Ga. App. 13 (5) (70 SE 214), is authority for this view.

*Central of Ga. R. Co. v. Mobley*, 6 Ga. App. 33 (4) (64 SE 300), holds: "A corporation knows of the violation of its rules and acquiesces therein whenever the particular agent of the corporation, who is charged with the enforcement of the rule in question, knows of its violation and acquiesces therein. The knowledge of the agent is the knowledge of the corporation; and though it is the duty of the inferior agent, charged with the enforcement of a rule, to inform his superior thereof, a breach of this duty can not affect the rights arising from his knowledge that the rule is being violated." While the last case cited refers specifically to the consequence of the master acquiescing in the violation of rules made to regulate the conduct of servants, the principle there pronounced is equally applicable, where as here the master is charged with knowledge that a ser-

vant carries a deadly weapon while performing the duties of his employment and interposes no objection to such conduct.

(b) As noted above there was sufficient evidence that the defendant had imputed to it knowledge that its servant, Mr. Disharoon, carried the pistol when engaged in performing the duties of his employment and there was evidence from which it could be fairly inferred that the defendant was likewise put on notice that he drank intoxicating liquors. But it was not essential to the plaintiff's right of recovery that there be proof of either of these facts. *American Security Co. v. Cook*, 49 Ga. App. 723, 724, supra.

(c) The evidence does not authorize the conclusion, as the defendant contends, that the occurrence resulting in the death of the plaintiff's son was an accident. The evidence showed without dispute that Mr. Disharoon carried the pistol into the service station for the purpose of cleaning it. There, in the presence of the deceased, he handled the gun, shifting it from one position to another about his person, without unloading it or applying its safety device designed to prevent accidental firing or even placing its firing pin upon an empty cylinder. That such misconduct was negligent and caused the pistol to fire when dropped, is apparent, especially in view of the strong proof that while engaged in handling the weapon he was intoxicated. The conclusion is inescapable that the death of the plaintiff's son was not attributable to an accident, but directly resulted from the above stated acts of negligence.

3. An enumeration of error alleges the trial judge erred in overruling a timely motion to exclude from evidence pictures of the deceased. According to previous rulings of this court this was not error. *Western & A. R. v. Reed*, 35 Ga. App. 538, 548 (134 SE 134); *Cagle Poultry &c. Co. v. Busick*, 110 Ga. App. 551 (1) (139 SE2d 461).

4. The remaining enumerations of error are without merit.

The trial judge did not err in denying the defendant's motion for summary judgment (see *Hill v. Willis*, 224 Ga. 263, 267 (161 SE2d 281)), motion for directed verdict and subsequent motion for judgment notwithstanding the verdict, and motion for new trial.

*Judgment affirmed. Bell, P. J., Jordan, P. J., Hall, Pannell and Deen, JJ., concur. Felton, C. J., Eberhardt and Whitman, JJ., dissent.*

EBERHARDT, Judge, dissenting. I dissent from the judgment and the portion of the opinion appearing in Division 2 (a). I have no quarrel with cases holding that the master can be held for injury caused by his servant when acting within the scope of his employment *and for the purpose of accomplishing the authorized business of his master.* That principle is well settled. But the record simply does not support the conclusion of the majority as to what the evidence shows, or their construction of it. A careful sifting of the evidence leads inevitably to the conclusion that a finding was demanded that Disharoon, the employee of American Oil Company, had stepped aside from his master's business and was engaged on a purely personal matter in obtaining his gun from the truck, bringing it into the service station and attempting to remove it from his pocket for cleaning when it was dropped to the floor, causing it to fire and inflict the fatal injury.

Mr. Ralph Stewart, Disharoon's supervisor, testified that he had never authorized or directed Disharoon to carry a gun for protecting American Oil's property, and that he never knew of his having a gun in his possession in the 10 years that he had been his supervisor save on one occasion (according to Disharoon, about six months previously) *in a motel room* at Dalton, *after working hours,* when they were in a room together and he saw a pistol *in Disharoon's suitcase.* The record is devoid of evidence indicating that he had previously taken the gun on the job.

Disharoon testified that the gun was *his own personal property* which he had acquired and carried for about a year because there had been a number of instances when somebody shook the door to his motel room at various places. It was "not necessarily to protect property of the American Oil Company—just to protect anything that I had with me. *It was for my protection.*" He testified that American Oil Company had never instructed or authorized him to buy the gun to protect its property, and that he had never shown it to any employee of that

company while on the job. So far as he knew, only his supervisor, Mr. Stewart, had ever seen it and that was on the one occasion at Dalton. He did testify that "I would have protected their property if it had come to that," though he had no instruction or authorization to use a gun in doing so. At best this statement was a mere conclusion. *Granger v. National Convoy &c. Co.*, 62 Ga. App. 294 (7 SE2d 915); *Metropolitan Life Ins. Co. v. Marshall*, 65 Ga. App. 696, 705 (16 SE2d 33). It had no probative value. *Patterson v. Cotton States Mut. Ins. Co.*, 221 Ga. 878, 881 (148 SE2d 320). Moreover, there is no evidence that there had ever been any indication of a need for a gun in connection with this job of packing and shipping the merchandise of a closed service station.

Relative to what Mr. Stewart knew of the matter Disharoon testified, "I carried my bag in the room, stayed in the same room, double room, and set the thing down and taken my stuff out of the bag and he seen it on the bed. Q. Did he ask you any questions about it? A. He said something about it; I don't remember what it was. Q. Did you tell him why you carried the pistol? A. Yes, sir. In a way I did and in a way I didn't. I didn't say much about it. Q. He knew you carried the pistol as a result of your employment with the company? A. No, sir. [I] don't think. Q. Did he tell you not to carry the pistol? A. No, sir. He didn't."

Stewart was asked about his knowledge concerning Disharoon's carrying a gun. "Q. Now Mr. Stewart you knew that Mr. Disharoon carried a gun for some six or eight months prior to the time this little boy was killed? A. I knew that he had a gun at some time previous to this. As to the exact time, it was some few months previous to this. Q. You had discussed it with him and he told you that he carried it for his protection; isn't that true? A. Yes. . . Q. Did it ever occur to you that he might be carrying a gun illegally while on the job of American Oil Company? A. *The only place I saw it was off the job—not on the job.*" Later Stewart testified, "I didn't know he had the pistol on the job at the time." Asked whether he had ever told Disharoon not to carry a gun he answered, "I have not, no." It was not Stewart's prerogative to instruct

Disharoon not to carry the gun for his own personal protection while off the job.

On the occasion here involved he had gone to his truck parked outside a station that he was closing, removed the gun from a suitcase, put it in his hip pocket and returned to the inside of the station. As to why he had done so, Disharoon asserted that he had fired it on the Chattahoochee River near Columbus some two or three weeks before and "I had in mind to clean it. I had it in mind to clean the gun."

It does not appear whether he did any cleaning of the gun, but as to how the incident occurred he testified: "I was taking it out of my pocket when I dropped it—my right hip pocket. I was going to take it back to the truck and put it up."

There is not one line of evidence in this record that Disharoon acquired or kept the gun with the authorization or approval of American Oil Company; there is evidence to the contrary. There is not one line of evidence that anybody with American Oil Company ever knew that he carried the gun to its property or while on the job; there is evidence to the contrary. There is not one line of evidence that he ever took the gun on the job save this one occasion; there is evidence to the contrary.

On this specific occasion the only evidence as to why Disharoon brought the gun into the service station was his own testimony that "I had in mind to clean it. I had it in mind to clean the gun." There is not a word of evidence that it was brought in for the benefit of or on behalf of American Oil to protect its property, or that it was done with its knowledge or consent; the whole evidence is to the contrary.

In a case where the facts as to the servant's carrying a gun on the job and knowledge thereof by the master weighed strongly against him, we held:

"If the act of the engineer in the present case was, as we have held, his personal act, and was not one for which the master was responsible, it would be wholly immaterial, on the question of the master's liability, whether the servant was of ungovernable temper, or *habitually carried a pistol while on duty*. If the master was liable because the act was performed by the servant

within the scope of his employment, the employee's temper or unfitness, and the *fact that he carried a pistol with the master's knowledge,* might be circumstances to be considered on the question of exemplary or punitive damage; *but these facts of themselves cannot make the master liable for an act done by his servant outside the scope of his employment,* and for which the master is not otherwise responsible. In other words, we do not think that the fitness, or the temperament or disposition, of the employee, and his private habits, are material facts to be considered, except on the question of aggravation, where the master is otherwise liable for the acts of the servant." (Emphasis supplied.) *L. & N. R. Co. v. Hudson,* 10 Ga. App. 169, 174 (73 SE 30).

Under rulings made in *Henderson v. Nolting First Mortgage Corp.,* 184 Ga. 724 (193 SE 347, 114 ALR 1022); *Savannah Elec. Co. v. Hodges,* 6 Ga. App. 470 (65 SE 322); *Ford v. Mitchell,* 50 Ga. App. 617 (179 SE 215); *Plumer v. Southern Bell T. & T. Co.,* 58 Ga. App. 622 (199 SE 353); *Pope v. Seaboard A. L. R. Co.,* 88 Ga. App. 557 (77 SE2d 55); *Corum. v. Edwards-Warren Tire Co.,* 110 Ga. App. 33 (1) (137 SE2d 738), and the many cases cited in them, only one conclusion is authorized—Disharoon was not serving his master in bringing the gun into the service station for cleaning or in his handling of it after bringing it inside.

Cases cited by the majority in support of their proposition do not authorize the result which they reach. In *Prince v. Brickell,* 87 Ga. App. 697, supra, one who was employed as a doorman at a night club and gaming house with instructions to admit only persons who had permission to enter, shot plaintiff's husband when he attempted to enter without permission. There could be no question that this act was in the scope of and in furtherance of the master's business.

*Frazier v. Southern R. Co.,* 200 Ga. 590, supra, and *American Security Co. v. Cook,* 49 Ga. App. 723, supra, simply hold that the master may be held for a wilful tort (assault) of a servant committed while acting in the scope and furtherance of the master's business. *Atlantic C. L. R. Co. v. McLeod,* 9 Ga. App. 13, supra, held it to be error to exclude a printed company rule

which the defendant contended the employee had violated in the commission of the alleged wrong. This and other cases cited relative to violation of company rules are wholly irrelevant. There was no claim of any rule or violation of a company rule here. And finally, *Employers Liab. Assur. Corp. v. Henderson,* 37 Ga. App. 238, supra, is a workmen's compensation case in which a policeman sought and was awarded compensation for an injury received while cleaning a gun which the city required him to carry as a part of his duties. It was no part of Disharoon's duty to carry a gun in the closing of a service station for his employer, nor was he even authorized to do so—certainly he was not so required. This case is wholly inapposite.

As to American Oil Company a verdict for the defendant was demanded. It was error to deny its motion for judgment notwithstanding the verdict.

I am authorized to state that Chief Judge Felton and Judge Whitman join in this dissent.