HENDERSON, by next friend, *v.* DADE COAL CO. *et al.*

1. As a general rule, persons in charge of a State convict, whether their custody and control of him be lawful or otherwise, are not liable in damages for a criminal tort committed by him while at large, although his being at large was by their permission, or because of their negligence in failing to keep him safely confined. Ordinarily, under such circumstances, the convict's wrongful act would be too remote a consequence of his keepers' misconduct in the premises to render them responsible to the person injured. This rule would, of course, be varied if they were in any way connected with the perpetration of the tort, or had reasonable grounds for apprehending that it would be committed.        .        .        ,
2. The present case falls within the general rule, and not within the exception indicated. Its material facts are summarized, and the conclusion therefrom stated, in the next note.
3. That a "felony" convict, about thirty-seven years old, who had been continuously in the penitentiary for about twelve years and who had five times escaped therefrom, was "a man in robust and vigorous health, immoral, brutish, devilish, of vicious habits, of violent passions, prone to desire for sexual intercourse," and a person "not restrained by any convictions

of right and wrong, or governed by any principles of moral-
ity," and that "all of these conditions and things" concerning
him "were well known and were understood" by his custo-
dians, "or ought to have been, because of what they knew
of his said person, history, character and surroundings," did
not, without more, afford such cause for apprehending that
he would, when an opportunity occurred, commit the crime
of rape upon an unprotected woman, as to subject his custo-
dians to liability in damages for the perpetration by him of
this offense at a time when, because of their fault, he was at
large and in the unrestrained control of his own movements.

Argued January 15-16,—Decided March 12, 1897.

Action for damages. Before Judge Reid. City court of
Atlanta. July term, 1896.

*Seaborn Wright, Watkins & Dean* and *N. J. & T. A.
Hammond,* for plaintiff.

*John L. Hopkins & Sons, Ellis & Gray, Bishop, An-
drews & Hill, Burton Smith* and *D. W. Meadow,* for de-
fendant.

LUMPKIN, Presiding Justice.

The declaration now under review discloses one of the
very saddest cases with which it has ever been our fortune
to deal. The plaintiff, Miss Maggie Henderson, was at the
hands of a brutal convict subjected to injury, wrong and
agony, both mental and physical, a recital of which would
make one of the darkest pages in our reports. Every mem-
ber of this bench was deeply moved and affected by the
account which the declaration gives of her blighted life.
There is not, perhaps, in the annals of litigation a story of
wrong which appeals more pathetically for human sym-
pathy. Were we to follow the instincts of our hearts, we
would be under the strongest impulse to sustain the plain-
tiff's action; but as magistrates, under the solemn duty of
enforcing what we conscientiously believe to be the law of
the case, we are compelled to hold that the trial court did
not err in sustaining the various demurrers alleging that
no cause of action was set forth. Omitting any mention

of numerous questions the decision of which is not, in the
view we take of the case, in the least degree essential to its
determination, we shall confine ourselves to a very brief dis-
cussion of the propositions announced in the head-notes,
from which the nature of the case, so far as now material,
will be readily apprehended.

(The case, at last, depends upon the question whether the
custodians of such a convict as is described in the third
head-note are legally responsible in damages for the conse-
quences of crimes committed by him while at large and in
the unrestrained control of his own movements, by their
permission or because of their negligence in failing to keep
him safely confined.) We have no doubt that, as a general
rule, a criminal tort committed by such a convict would
be too remote a consequence of his keepers' misconduct in
the premises to render them responsible to the person in-
jured.   While cases may arise in which this general rule
should be varied, as where it appears that the custodians of
the convict were in some way connected with the perpetra-
tion of the tort, or had reasonable grounds for apprehending
that it would be committed, nothing is alleged in the pres-
ent declaration to bring this case within such an exception.
The direct and proximate cause of the injuries inflicted
upon Miss Henderson was the independent action of the
convict himself.   He, though vicious, brutal and infamous,
was nevertheless an accountable human agent.   While, ac-
cording to the plaintiff's averments, he was not restrained
by any convictions of right or wrong, nor governed by any
principles of morality, the declaration does not attempt to
allege that he was not a rational person, fully amenable to
the laws both of God and of man.   That he was prone to a
desire for sexual intercourse did not, by any means, render
him an exception to a law of nature which universally pre-
vails in the animal kingdom, whether as applied to human
beings, or animals of lower orders.   Vile as this man was, it
cannot be held that the defendants could reasonably have

anticipated that he would, upon the first opportunity, assault and ravish any defenseless woman whom he might encounter. He was equally liable to commit some other heinous crime; and they were not bound to presume that he would commit any crime at all. The State requires the lessees of convicts, at the expiration of their terms, to furnish them transportation to the counties in which they were convicted. Thus the law clearly contemplates that these criminals shall be set at liberty in the very communities whence they came. It can hardly be questioned that scores, perhaps hundreds of convicts just as bad as the one now under consideration are, from time to time, set at large by the law's command. If there was reason to apprehend that convicts of this depraved type would, upon regaining their liberty, commit such crimes as that complained of in the present case, it would seem that the true policy of the law would be to keep them imprisoned during their lives. That such is not the policy of the law is due to the fact that reason for apprehending such outrages does not really exist.

The true rule applicable in a case like the present was recognized and stated by this court in the case of *Perry v. Central Railroad*, 66 Ga. 751, wherein it was said that in order to entitle a party to recover damages on account of the negligence of another, it should appear that the damages were the natural and proximate result of such negligence; "for should it appear that, but for the intervention of a responsible third party, the defendant's negligence would not have caused damage to the plaintiff, then the defendant is not liable to plaintiff, for the reason that the causal connection between negligence and damage is broken by the interposition of an independent, responsible human action." In support of this doctrine, Judge Stewart, who presided in the place of Chief Justice Jackson, disqualified, cited Field on Damages, §§13, 32, 52, 53, 78; Wayne on Damages, §25; Wharton on Negligence, §134; Wait's Ac-

:tions and Defenses, title "Damages." It is true that, in the
·case just cited, the action was based upon a tort of an al-
together different character, but the principle announced
·controls the case at bar.

The case of *Belding* v. *Johnson*, 86 *Ga.* 177, also has
some bearing upon the question at issue, it being there held
that the death of the plaintiff's husband, who was killed by
.a man under the influence of liquor, who when in this con-
dition was violent and dangerous, was not occasioned by
the act of a barkeeper who had furnished liquor to the
.slayer when he was already drunk, and had failed to pro-
.tect the deceased from the homicidal assault made upon him
in the barkeeper's place of business. Although the latter
·violated a penal statute of this State in so furnishing the
.liquor, it was in effect held that he was not bound to antici-
,pate that this unlawful conduct on his part would result in
.a homicide.

A somewhat similar question was dealt with in Shugart
·v. Egan, 83 Ill. 56. There, the person furnished with the
intoxicating liquors was himself, in consequence of abusive
.language used to another, assaulted and killed. In a sense,
the furnishing of the liquor was an indirect cause of his
·death; but the court held it was not the efficient and proxi-
mate cause. In a case decided by the Supreme Court of
Minnesota (34 N. W. Rep. 22), it appeared that a minor
.person of the age of 18, upon invitation of the defendants,
·drank intoxicating liquors with them and their friends at
·divers saloons several times during the same evening, some
of the liquor being ordered and paid for by the defendants
themselves. "He became intoxicated and quarrelsome, and
committed an assault upon plaintiff, resulting in serious
injury to him," but "was not incited thereto by the defend-
·ants, and it was his own voluntary act. In an action against
them by the plaintiff for damages, on the ground that the
assault was the result of their acts in furnishing the liquor
supplied to the minor," the reviewing court held "that the

damages were too remote, and were not to be deemed the natural and proximate result of the alleged wrongful acts of the defendants." A case which, upon its facts, is still more closely in point, is that of Hullinger v. Worrell, 83 Ill. 220. It was there held that a sheriff who negligently permitted the escape of a prisoner in his custody under an indictment for an assualt with intent to murder, was not liable in damages for the consequences of a subsequent assault by the escaped prisoner upon the same person upon whom the indictment in question charged that the original assault had been committed. This decision was based explicitly upon the proposition that the act of the prisoner, after regaining his liberty, was not the natural and probable consequence of the escape.

Cases more or less resembling the foregoing are quite numerous, but it would not be helpful to multiply citations on this line. The rule of law that damages arising ex delicto are not recoverable unless they spring from the negligence or misconduct of the defendant, is as well settled as any legal principle. The difficulty arises in its application to given cases. We have been unable to find any case precisely like the present; but our minds have without difficulty reached the conclusion that none of the lessees of penitentiary convicts, named as defendants, can be made liable for the crime committed in this instance. Nothing they did, or omitted, was its efficient or approximate cause. It was the independent act of another, not standing in any relation to the defendants which would render what he did imputable to them. The court below was right in sustaining the demurrers and dismissing the action.

*Judgment affirmed. All the Justices concurring.*