9597. WHITERS *v.* MALLORY STEAMSHIP COMPANY.

1. A servant is bound to obey a command, when given as such, by one occupying the relation of vice-principal to the master, if it pertains to the duties of the servant's employment and does not involve a violation of the law, and if the act required is not one which is of itself so obviously dangerous that no person of ordinary prudence could be expected to perform it. If, under the circumstances existing at the time of its issuance, the giving of such an order constitutes an act of negligence, but the servant, acting under the duty and obligation thus resting upon him, proceeds to execute the command, and is injured as a consequence, the master is liable in damages to the servant for the injuries so sustained. *Moore* v. *Dublin Cotton Mills,* 127 *Ga.* 609, 616 (56 S. E. 839, 10 L. R. A. (N. S.) 772).

2. Whenever the vice-principal of the master enters upon the discharge of duties which relate solely to the ordinary work and functions of a servant, he will be presumed to have assumed the status of a servant, and when he is thus acting in the capacity of a mere fellow-servant the master is not liable for his acts of negligence whereby another servant is injured (*Studevant* v. *Blue Springs Lumber Co.,* 16 *Ga. App.*

668 (3), 85 S. E. 977). If, however, one who is in fact a vice-principal of the master gives what ordinarily would amount to nothing more than a usual and customary work signal, but in such manner as expressly to indicate with all reasonable clearness that he is then and there assuming to speak, not in the capacity of a fellow-servant, but as the representative of the master, and that with his authority he is engaged in giving a command, then the mere fact that the nature and character of the order may in effect actually correspond with what would ordinarily amount to nothing more than a work signal if issued by a servant, or by one speaking merely as such, would not prevent the order thus given by the vice-principal from having the full force and authority of a command.

3. In this case it was a question for the jury to determine whether the vice-principal, if he in fact was such, in giving the order complained of, was merely performing the ordinary work and duties of a servant, or whether, under the particular facts and circumstances sworn to, he was then and there assuming and purporting to act with the authority of the master, and as his representative was giving the order as a positive command.

DECIDED NOVEMBER 12, 1918.

Action for damages; from city court of Brunswick—Judge Krauss. November 14, 1917.

*C. B. Conyers, A. D. Gale,* for plaintiff.

*Bennet, Twitty & Reese,* for defendant.

JENKINS, J. Plaintiff was employed by the defendant as a laborer in loading its ship. From the evidence introduced by plaintiff it appears that the gang of which he was a member was working on the main or between deck of the ship, and had finished loading cross-ties into the hold of hatch number one, which was a hole in the deck, about twelve or fourteen feet long by eight or ten feet wide, and through which the cargo is lowered into the hold. After the loading of the cargo is completed, it is necessary to cover the hatch, and this is done by first putting in place a piece of iron called the strong-back. Hatch covers are then placed over the hatch, supported by the strong-back. The covering of the hatch is a part of the work of the gang engaged in the loading. The loading is done by a hoisting engine which is on the deck above the main or between deck, and the hoisting engine is so situated on the upper deck that the man operating it can not see through the hatch, thus making it necessary to have a man called the "stage-runner" to stand upon the upper deck, whose duty it is to transmit signals from the gang below to the man operating the hoisting engine, both the engineman and the stage-runner being members of the gang at that hatch. The placing of the strong-

back in position is done by the hoisting engine, a chain and hook running from the engine down through the hatch, which is hooked into the strong-back to place it in position, and when the covering of the hatch is completed the chain is unhooked, and upon a signal to "go ahead," given by a member of the gang, the chain and hook are drawn up by the hoisting engine.

On the occasion in question, while plaintiff and a colaborer were engaged in placing the hatch covers, the signal or order from the gang at the hatch to the stage-runner was given by Bill Bowman, who was not a member of the gang, but was assistant stevedore, or outside foreman, and foreman over three hatches, including the one at which the plaintiff was engaged. Although it was a disputed issue as to whether or not Bowman was a vice-principal of the defendant company, still it is conceded by the defendant that the evidence was sufficient to have authorized a finding that he was. When the hoisting engineman, in response to the signal given by Bowman, started his engine, the hook caught in the strong-back, jerking it and the hatch covers out of place, and throwing plaintiff and his colaborer into the hold below, whereby he alleges he was injured. The plaintiff himself testified that "It was the business of anybody belonging to that gang to give the signal to go ahead to the man that was running the stage. . . . I have given the signal to go ahead myself;" and this fact was substantiated by the testimony of other witnesses. Ferguson, a witness in behalf of the plaintiff, who was "gang-header" or sub-foreman over the gang of which plaintiff was a member, and who was under Bill Bowman, testified as follows: "Bill Bowman came up there and told them to go ahead on it because *he was rushing the work.* When Bill holloaed 'go ahead' I halloaed 'hold', *and the donkeyman didn't go ahead;* and Bill said, *'Didn't I tell you to go ahead on it,'* and *when he said that the donkeyman went ahead* and these boys were trying to get off then and both of them went into the hatch." This testimony of the witness Ferguson was denied, however, by Bill Bowman, when sworn as a witness for the defendant. Upon the conclusion of the evidence, the court below directed a verdict in favor of the defendant. The plaintiff excepted to this ruling.

It is not necessary to add anything further to what is said in the headnotes.

*Judgment reversed. Wade, C. J., and Luke, J., concur.*