43613.   HUNTER v. A-1 BONDING SERVICE, INC.

Argued May 6, 1968—Decided September 20, 1968—
Rehearing denied October 11, 1968—

*Larry Cohran, Randall Evans, Jr.,* for appellant.

*Webb, Parker & Ferguson, Paul Webb, Jr., Turner Paschal, Smith, Gardner, Wiggins & Geer, Peter Zach Geer,* for appellee.

EBERHARDT, Judge. ■ Although the complaint was amended after the motion to dismiss was made and urged, the amendment contained nothing in the way of allegations different from those already in the complaint or changing the nature of the claim presented. It is thus immaterial that there was no renewal of the motion after the amendment.

■ It is somewhat difficult for us to adjust our thinking relative to the requirements as to pleadings under the Civil Practice Act, simply because of the deep impressions made by many years of experience under the Code pleading. But there is a difference, and we think it appears here.

There can be no question that prior to the effective date of the Civil Practice Act, the sustaining of the motion to dismiss would have been correct. *Ford Motor Co. v. Williams,* 219 Ga. 505 (134 SE2d 32). But under our ruling in *Harper v. DeFreitas,* 117 Ga. App. 236 (1) (160 SE2d 260), it seems to us that the petition was sufficient to withstand the assault of the motion.

As was pointed out in the recent case of *Byrd v. Ford Motor Co.,* 118 Ga. App. 333 (163 SE2d 327), the Civil Practice Act does away with "issue pleading" and substitutes "notice pleading." Consequently, if the complaint can be said to give notice of any claim which the plaintiff may have against the defendant that could be sustained by proper proof it should not be dismissed. Issues are made and pointed up by discovery, on pre-trial and in the pre-trial order, on motions for summary judgment, or other available techniques, and by the evidence itself, unless in instances when some matter is required to be specially pleaded. See *Code Ann.* § 81A-109. "If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient. . . . Under the old practice the pleadings not only served

the function of giving notice of the claim asserted, but they also carried the burden of formulating the issues and to a large extent of advising the adverse party of the facts involved. Now the deposition and discovery procedure [under §§ 81A-126, 81A-137] and the pre-trial conference [under § 81A-116] afford a much more efficient method of getting at the facts than pleadings ever offered, and they also bear much of the burden of making up the issues, so that the real office which the pleadings continue to serve is that of giving notice." 2A Moore's Federal Practice, § 8.13, p. 1703. And compare *Reynolds v. Reynolds,* 217 Ga. 234, 246 (123 SE2d 115).

Whether the conduct of the defendant's servants was beyond the scope of their authority or was an independent personal matter on their part is a legitimate issue that may be raised. But since *issues* are not ordinarily raised by pleadings under the Civil Practice Act, that is to be done by some of the other available methods—not by a motion to dismiss, for the complaint does give the defendant *notice* of a claim against it because of the killing of the plaintiff's husband by the defendant's servants. A construction of the complaint resulting in a holding that the allegation that the servants, after going to plaintiff's home, left, armed themselves with pistols and returned *for the purpose of killing* plaintiff's husband discloses that the servants were then on a personal mission can be arrived at only by construing the petition *against* the pleader, instead of in his favor as the Act requires, and decides an issue which should be otherwise resolved.

This allegation does go far to indicate that the servants may have been on a personal mission, and on motion for summary judgment or upon a trial of the case it may stand sufficiently as an admission to justify an adverse verdict and judgment unless it has been withdrawn, or the evidence clearly demonstrates the contrary to be true.

However, it may appear upon a motion for summary judgment, or upon a trial of the case, *from the evidence submitted,* that the servants were still acting within their authority or upon instructions from the master when they returned to accomplish their mission. That the purpose of their return may have been partly personal, resulting from an argument that had developed,

would not bar a recovery if the purpose was also to accomplish the mission on which they had been sent out. To bar a recovery it must appear that the mission was purely personal, disassociated from any business of the master. Cf. *Knowles v. Gwynn*, 224 Ga. 595, reversing *Knowles v. Gwynn*, 117 Ga. App. 686 (161 SE2d 380). Under our new system of pleading, that does not appear at this stage of the matter, though it may do so later on, as we have indicated.

The situation is somewhat analogous to a wrongful assault on a passenger by a railroad conductor (*Mason v. Nashville, C. & St. L. R. Co.*, 135 Ga. 741 (70 SE 225, 33 LRA (NS) 280); *Louisville &c. R. Co. v. Hudson*, 10 Ga. App. 169 (73 SE 30)), or upon a third party (*Savannah Electric Co. v. Wheeler*, 128 Ga. 550 (58 SE 38, 10 LRA (NS) 1176)). However, we find no quarrel with the principle of law relative to the liability of the master for an unauthorized personal act of the servant, as cited in the dissents. What we deal with here is not the substantive law, but a procedural matter under the Civil Practice Act.

*Judgment reversed. Bell, P. J., Jordan, P. J., Hall and Pannell, JJ., concur. Felton, C. J., Deen, Quillian and Whitman, JJ., dissent.*

FELTON, Chief Judge, dissenting. ■ If the majority view is correct, one is led to wonder why the Georgia CPA, fashioned after the Federal rules, provided in *Code Ann.* § 81A-112 (b) (6) that a claim may be dismissed for *"failure to state a claim upon which relief can be granted."* If this petition *after opportunity for amendment* by the plaintiff and her failure to strike the allegation that the defendant's agents returned to the home of the deceased for the purpose of killing him, can be held not subject to a motion to dismiss, we may as well write off the provision of law providing for the dismissal of a claim. There has been so much attention paid to notice pleadings, discovery, pre-trial proceedings, etc., discussed in the majority opinion, that the facts and principles applicable to this case have been ignored as insignificant or inadvertently overlooked. The Supreme Court of the United States, in Conley v. Gibson, 355 U. S. 41, 45, 46 (78 SC 99, 2 LE2d 80) construes the Federal law which we copied. It said: "A complaint should not be dismissed for failure to state

a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Let us apply that law to this case. The plaintiff on a trial, if one had been had, could not have proved a case, and cannot now, so long as her petition contains the allegation that the agents returned for the purpose of killing the deceased. *It is wishful thinking to say that under this allegation the stated purpose could be turned into one amended in the mind of the thinker to mean "returned to kill him if the circumstances require it in self-defense."* What the Supreme Court says is, "if you cannot prove a case under the statement of your claim as you have stated it in your pleading, and have had an opportunity to withdraw it by amendment and you refused, your petition must be dismissed." There is no question of construction of pleadings under the old law "against the pleader," even if some cases say so. Specific allegations displace general ones in such cases as this, such as a general allegation of agency, under logical rules of construction, *and not under a rule of construction against a pleader.*

*The CPA did not wipe out or destroy the law in Georgia to the effect that a party to an action is bound by material allegations made in his pleadings so long as they remain in his pleadings.* Rogers Lumber Co. v. Smith, 91 Ga. App. 632, 634 (86 SE2d 640); Carter v. Gen. Finance &c. Corp., 96 Ga. App. 423, 426 (2) (100 SE2d 99); Community Loan &c. Co. v. Bachmann-Uxbridge Worsted Corp., 96 Ga. App. 586, 588 (2) (100 SE2d 602); Grigsby v. Fleming, 96 Ga. App. 664, 665 (1) (101 SE2d 217); Head v. Lee, 203 Ga. 191, 203 (8) (45 SE2d 666); Mitchell v. Arnall, 203 Ga. 384, 386 (8) (47 SE2d 258); Corr v. Corr, 213 Ga. 699, 701 (100 SE2d 922); Brittain v. Reid, 220 Ga. 794, 797 (2) (141 SE2d 903); plus citations in all the above cases. *So, at the time the motion to dismiss in this case was granted, the plaintiff could not prove a case of liability against the defendant.* There follow some examples of holdings from Federal jurisdictions which illustrate the proposition that a claim is subject to dismissal when the statement of a claim is deficient in spite of the "notice pleading," etc., arguments. In Weinberg v. Sinclair Refining Co., 48 FSupp. 203 (DCNY, 1942), *it was held that*

*the plaintiff's contradictory pleadings are to be construed in favor of the defendant*: Federal Life Ins. Co. v. Ettman 120 F2d 837 (CCA Mo. 1941) (314 U. S. 660); Wise v. City of Chicago, 308 F2d 364 (1) (372 U. S. 944); L. S. Good & Co. v. H. Daroff & Sons, Inc., 263 FSupp. 635 (12); Package Closure Corp. v. Sealwright Co., 4 F. R. D. 114; Edelman v. F. H. A., 251 FSupp. 715; Leggett v. Montgomery Ward & Co., 178 F2d 436 (6); Trans World Airlines v. Hughes, 38 F. R. D. 499 (2), citing Thomson v. Wooster, 114 U. S. 104 (5 SC 788, 29 LE 105); Robbins v. Zabarsky, 44 FSupp. 867 (4); De Loach v. Crowley's, Inc., 128 F2d 378; Pelelas v. Caterpillar Tractor Co., 113 F2d 629 (CCA Ill. 1940) and cit., aff'g. 30 FSupp. 173, cert. den., 311 U. S. 700 (61 SC 138, 85 LE 454); Josephson v. Joslin, 38 F. R. D. 344 (1); Brewington v. R. C. A., 210 FSupp. 204; Smith v. Cushman Motor Works, 8 F. R. D. 221 (3); Maddox v. Shroyer, 302 F2d 903 (CADC 318); Schaefer v. Macri, 196 F2d 162 (CA 9th Cir.) (344 U. S. 832).

■ The agents could not be found to be on their master's business under the allegations now contained in the petition. "Every person shall be liable for torts committed by . . . his servant, by his command *or in the prosecution and within the scope of his business*, whether the same shall be by negligence or voluntary." *Code* § 105-108. (Emphasis supplied.) There being no allegation in the present complaint that the tort was committed by the employer's command, the employer's liability, if any, must arise out of the commission of the tort "in the prosecution and within the scope of his business." In determining this liability, the test is "not whether the act was done during the existence of the employment, but whether it was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment." *McGhee v. Kingman & Everett, Inc.*, 49 Ga. App. 767, 768 (2) (176 SE 55) and cit.

It is impossible to determine from the complaint exactly what the scope of the master's business was, since this is not alleged. Even assuming that the defendant's agents were acting within the scope of their master's business in their initial visit to the decedent's premises, however, as is alleged and which must be

accepted as true on motion to dismiss, this does not demand the same conclusion with regard to their subsequent visit, on which the decedent was killed. The master is not liable for acts of his servants while they are stepping aside from the duties of their employment, and is subsequently liable only if his servants, after stepping aside, have resumed and are again engaged in the conduct of their master's business. *Palmer, Phinizy & Connell v. Heinzerling,* 34 Ga. App. 544, 545 (3) (130 SE 537); *Atlanta Furniture Co. v. Walker,* 51 Ga. App. 781 (1) (181 SE 498).

Paragraph 8 of the complaint alleges that the defendant's servants or agents engaged in an "argument and dispute" with the plaintiff's decedent on their initial visit, "and thereafter left said home of Herman Charles Hunter and armed themselves with weapons, and returned to said home of Herman Charles Hunter *for the purpose of killing him."* (Emphasis supplied.) *Code Ann.* § 81A-108 (f) (Ga. L. 1966, pp. 609, 619; Ga. L. 1967, pp. 226, 230) provides as follows: "All pleadings shall be so construed as to do substantial justice." The identical Federal Rule of Civil Procedure has been construed so as to resolve all doubts or ambiguities concerning the meaning of or intendment of the pleader's language in favor of the claim attempted to be stated when the complaint is attacked by a motion to dismiss the action. Porter v. Karavas (CCA 10), 157 F2d 984. The above allegation, however, is neither doubtful nor ambiguous, and is susceptible of but one meaning, i.e., that the purpose of the second visit of the defendant's servants was to kill the plaintiff's decedent.

Since, as has been said, it is not alleged that this wilful tort was committed by the command of the defendant corporation, the only other way by which the defendant might be held liable (other than by his express or implied consent, which is not alleged) would be to accept as controlling the general allegation that the act of premeditated murder was done by the agents within the scope of their authority. While such a general averment of agency is ordinarily sufficient, it must yield to specific allegations which negative the general allegation, which then becomes merely a conclusion of the pleader. *Plumer v. Southern Bell T. & T. Co.,* 58 Ga. App. 622 (199 SE 353); *Heath v. Atlanta Beer Distributing Co.,* 56 Ga. App. 494 (193 SE 73).

The proposition that premeditated murder could be within the scope of the business of a corporation is repugnant to reason, justice and the whole body of our law. "Corporations are creatures of the law, and their powers are limited." *First Nat. Bank of Tallapoosa v. Monroe,* 135 Ga. 614, 616 (69 SE 1123, 32 LRA (NS) 550). It would be an anomaly for the law, as the creator, to endow its corporate creature with the power to do unlawful acts, which are by definition contrary to and destructive of the very nature and existence of the creator, law. Our statutory provisions with regard to corporations are replete with requirements that they can be chartered to conduct only *lawful* business. See *Code Ann.* §§ 22-1802 (h) (Ga. L. 1937-38, Ex Sess., pp. 214-216; Ga. L. 1965, pp. 602, 603); 22-1827 (f) (Ga. L. 1937-38 Ex. Sess., pp. 214, 222, 223); 22-1828 (g), 22-1828 (h) (Ga. L. 1937-38, Ex. Sess., pp. 214, 223). "[N]o charter of a sanely conducted corporation authorizes unlawful or negligent acts." *City of Columbus v. Webster,* 51 Ga. App. 270, 277 (180 SE.512). "Ill will and hatred are born and nurtured in the brain and breast of man, not in an inanimate corporation." *Heath v. Atlanta Beer Distributing Co.,* 56 Ga. App. 494, 497, supra. A charter authorizing the commission of wrongful homicide might as well denominate the corporation, "Murder, Inc." Nor could such a power be implied under the so-called "common powers" of corporations. *Code* § 22-703; *Code Ann.* §§ 22-1827, 22-1828, supra. An illustration of one aspect of this principle is seen in the prohibition of corporations' practicing law. *Code* § 9-402 (Ga. L. 1931, p. 191); *Boykin v. Hopkins,* 174 Ga. 511, 520 (4) (162 SE 796).

Hence, murder could not be within the scope of the business of any legally formed corporation, either under its charter or otherwise. Had the complaint alleged to the effect that the decedent was killed while the agents were engaged in the conduct of their master's business, a cause of action might have been stated. By alleging a purpose which could not have been within the scope of the defendant corporation's lawful business, however, the complaint shows as a matter of law that the liability, if any, for the tort was that of the individual employees, rather than of their corporate employer. Therefore, the court did not err in

its judgment dismissing the action for failure to state a claim upon which relief can be granted.

I am authorized to state that Judges Deen, Quillian and Whitman concur in the foregoing dissent.

DEEN, Judge, dissenting. I concur in the dissent of Chief Judge Felton and for additional reasons I further dissent.

Chief Judge Benjamin Harvey Hill vividly outlines what I believe to be the applicable law in the case of *Louisville &c. R. Co. v. Hudson,* 10 Ga. App. 169, 171 (73 SE 30): "The courts generally have found some difficulty in holding the master liable for a homicide intentionally committed by his servant, in the absence of any express command on the part of the master, and the majority of adjudications seem to favor the theory that in the absence of express authority the master is not liable in damages for a *deliberate, intentional, and wilful homicide committed* by his servant. 1 Thomp. Neg. § 571. But, whatever may be the adjudications in other jurisdictions on this subject, it is settled by the statute law of this State that the master would be liable where the homicide was committed by the servant *in the prosecution and within the scope of the master's business,* whether it was actually committed by the command of the master, or was the result of negligence on the part of the servant, or his voluntary act. . .

"The master is not an insurer against wrongs perpetrated by his servants. It would be unjust to hold him responsible for these wrongs, unless they were done by the servant while *he was in the performance of the master's business and was acting within the scope of his employment.* The rule of liability in the case is based upon the old maxim, 'Qui facit per alium facit per se,' and if the servant, instead of doing that which he is employed to do, does something which he is not employed to do at all, and the act is not properly within the scope of his employment, it can not be said that the master does the act by his servant. Mr. Thompson, in his work on Negligence (section 526), lays down the test by which to determine whether a servant acts within the scope of his employment. 'The test is not that the act of the servant was done during the existence of the employment, —that is to say, during the time covered by the employment, —but

*whether it was done in the prosecution of the master's business;
whether the servant was at that time engaged in serving his
master;* for, if the servant steps aside from his master's busi-
ness, for however short a time, to do an act not connected with
such business, the relation of master and servant is for the time
suspended, and the servant alone is responsible for his act com-
mitted by him during this period.' In the case of *Savannah
Electric Co. v. Hodges,* 6 Ga. App. 470 (65 SE 322), Judge
Russell, speaking for this court, quoted approvingly the fore-
going test of liability of the master for the servant's act, and
held that 'if the servant steps aside from his master's business,
for however short a time, to do an act entirely disconnected
from it, and injury results to another from such independent
voluntary act, the servant may be liable, but the master is
not liable.'

"The decision of this court in the case just cited would seem
to control the case now under adjudication, for the facts of the
two cases are not so different as to afford substantial room for
any different application of the rule of law. The question here
to be decided, under this rule of law, is whether the killing of
Hudson by Jackson was done by Jackson in the prosecution or
furtherance of his employer's business, or whether in the killing
Jackson turned aside from his master's business and committed
an act wholly disconnected therefrom, and for the consequences
of which he, and not his master, would be liable. While re-
peated adjudications in analogous cases leave the solution of
this question not entirely free from doubt, still it seems to us,
restricting our view to the facts of this transaction, and not
looking beyond, or permitting ourselves to become perplexed in
the maze of contradictory rulings, that we should adopt, as the
most reasonable conclusion, the view that when Jackson com-
mitted this homicide he had turned aside for that purpose from
his master's business and was engaged in his own personal
matter. Jackson made against Hudson, an implied accusation
of improper conduct. Hudson resented this accusation by in
effect denouncing Jackson as a liar, and *Jackson immediately
ran to his box on the engine, secured his pistol, and instantly
shot and killed Hudson.* He shot Hudson, because Hudson

called him a liar. It was to resent what he deemed a personal insult. He did not shoot and kill Hudson because in his opinion Hudson had been guilty of cutting off the air-brakes and thus interrupting him in the proper discharge of his official work; and, even if he had done this, it is not clear that the master would have been liable. The killing was due solely to an insulting epithet used by Hudson. Jackson was acting for his master in delivering the cars to the Charleston & Western Carolina Railway Company, and if Hudson had interfered with this work, and Jackson had resented such interference, and made an assault and battery, or killed Hudson for such interference, it might be claimed that the tort was committed by Jackson in connection with his master's business; but it can not be doubted that the killing of Hudson was due solely to the insulting epithet, and that but for it the homicide would not have occurred. *If the truth of this proposition is not sufficiently apparent from the mere statement of the facts, we are sure it can not be rendered any more manifest by argument, or by citation of authority.* We therefore do not deem it profitable to extend the discussion *on this point.* See *Henderson v. Dade Coal Co.,* 100 Ga. 568 (28 SE 251, 40 LRA 95).

"The cases relied upon by counsel for the defendant in error —*Savannah Electric Co. v. Wheeler,* 128 Ga. 550 (58 SE 38, 10 LRA (NS) 1176), and *Mason v. Nashville, Chattanooga & St. Louis Ry.,* 135 Ga. 741 (70 SE 225, 33 LRA (NS) 280)— are distinguished by their facts from the present case. Both of these were *cases of passengers, where the rule of extraordinary diligence applies, and the master is under a duty through his agents of personally protecting the passenger from any insult either by one of his own employees or by third persons.* In the *Wheeler* case the conductor drew a pistol and fired at a passenger, missing the passenger and killing an innocent woman passing on a public street through which the car was running, because the passenger had asked the conductor for his change. The Supreme Court held that this tort of the conductor was within the scope of his *business in collecting fares.* In the *Mason* case the passenger was drunk and disorderly, and used foul and abusive language to the conductor, which brought on a

difficulty, and the conductor was in the discharge of his duty in attempting to eject the disorderly passenger." (Emphasis supplied.) The allegations in the case sub judice show that Thompson and Bowers engaged in an argument with Hunter, left and armed themselves with weapons and returned to the home of Hunter for the purpose of killing him and Thompson shot him with a pistol are analogous to the above cited case when Jackson engaged in an argument with Hudson and "Jackson immediately ran to his box on the engine, secured his pistol, and instantly shot and killed Hudson."

"In explanation of the rule, this court long ago held, as the result of the authorities examined and cited, that when the servant is in the performance of his master's orders or authorized acts, and in the doing thereof conducts himself so negligently or unskilfully that injury results to another, then the doctrine of *respondeat superior* applies, and the master will be liable in an action on the case; but that, for the acts of the agent wilfully and intentionally done without the command and authorization of the master, the servant, and not the master, is liable; and that the rule has no application when the servant actually wills and *intends the injury*, or steps aside from the purpose of the agency committed to him, and inflicts an *independent wrong.*" (Emphasis supplied.) Goodloe v. Memphis & Charleston R. Co., 107 Ala. 233, 240 (18 S 166, 29 LRA 729, 54 ASR 67). "There can be no agency in the perpetration of a crime, misdemeanor, or any unlawful act, and all parties participating therein are principals." 2 CJS 1039, 1040, Agency, § 12. "An agent cannot be said to be acting within the scope of his agency if the act complained of if done by the master would be unlawful." Porter v. South Penn Oil Co., 125 W. Va. 361, 364 (24 SE2d 330). *Parry v. Davison-Paxon Co.*, 87 Ga. App. 51, 55 (73 SE2d 59), holds: "The allegations of the petition negate the essential fact necessary to hold the master liable for the tortious acts of the servant, for the allegations clearly show that the assault was not committed in furtherance of the master's business, but, rather, clearly show the affair to be a personal matter between the manager and the plaintiff." In *Savannah Electric Co. v. Hodges,* 6 Ga. App. 470, 475 (65 SE 322), it was held,

510

"Up to this time water had been used to put out a fire, but, no water being present, Spahn decided to try compressed air. He put out the fire, but the cracking noise attracted Nichols and other employees. Nichols directed Spahn to go into the engine to adjust a valve, and held the air hose to put out any fire which might appear. As Spahn ascended the engine Nichols turned the air pipe on him, causing him to jump and the bystanders to laugh. Nichols then turned the hose on Currie, so that the air struck him about the buttocks. The air passed through his rectum, perforated his bowels, and caused his death. Currie's widow brought suit against the company. . . The fact that Nichols, while holding the hose, conceived the purpose of using it and did use it upon the employees, in sport, is undisputed, and is wholly inconsistent with any assumption that he was then in any way attempting to serve the defendant. His act was a clear departure, for the time, from that service, and the quickness with which it was done can not be made the test. If the turning aside from the master's business be only for an *instant*, so that it be complete, the authorities agree that there is no liability on his part for the defendant's act." (Emphasis supplied.)

I would affirm the trial court's judgment dismissing the action for failure to state a claim upon which relief can be granted.