## 49907. WILEY v. GEORGIA POWER COMPANY.

EVANS, Judge.

Mrs. Thelma Wiley sued Georgia Power Company, and its supervisor, James A. Smith, for damages because of having been subjected to humiliation, embarrassment, degradation, etc. brought on by said supervisor's having committed assault and battery upon her, in that, on October 17, 1972, he laid his hands upon her in a grossly improper manner, without her permission, and caused her to suffer extreme physical and mental anguish and damage. She alleges that she reported the incident to Georgia Power Company's manager for the Gainesville district; and thereafter defendants threatened and intimidated her, cursed and used abusive language towards her, and threatened her with loss of her job; and then did actually take her job away from her and replaced her with a black employee.

Georgia Power Company moved for summary judgment, which was granted, and plaintiff appeals. *Held:*

1. There was an issue for the jury as to liability, not on one theory alone, but on three separate theories, to wit: (a) The evidence was sufficient to create a jury issue as to whether James A. Smith, as supervisor for Georgia Power Company was a *vice-principal,* and not a mere *fellow-employee,* of plaintiff. If he was a vice-principal, Georgia Power Company is liable for his wrongful acts towards plaintiff. (b) The evidence is sufficient to create an issue as to whether Georgia Power Company and its supervisor conspired to force plaintiff to resign her employment, and upon her refusal so to do, wrongfully discharged her. (c) The evidence is sufficient to create an issue as to whether Georgia Power Company became liable for the wrongful conduct of its supervisor, by ratifying such acts, through his retention in employment, and otherwise.

2. First, there was an issue of fact as to whether Georgia Power Company had knowledge on October 17, 1972, of facts or circumstances sufficient to put it on notice that its supervisor had committed immoral acts; or that the relationship of supervisor-employee between him and Mrs. Wiley would likely result in some such act as actually thereafter happened. Further, the movant conceded that Mrs. Wiley offered the affidavit of Dwight J. Eavenson, District Sales Supervisor for Georgia Power Company, who testified that prior to October 17, 1972, three female employees had told him of molestations by the supervisor and asked for protection from him; and to be sure they were not left alone in the office with him; and that Mrs. Wiley had come to him personally three or four months before October 17, 1972, and requested that she not be left alone in the office with said supervisor.

But then, the trial court agreed with defendant's contentions that because Mrs. Wiley *knew* of the amoral and amorous propensities of the supervisor towards female workers, she should not have continued to work with him; and that the master is not liable here because plaintiff could have protected herself by refusing to work with him (presumably by quitting her job). Defendant and

the trial judge cited many authorities on the "fellow-servant" rule in support of this proposition, which rule in effect requires one servant to assume the risk of injury by a fellow servant.

But this theory overlooks the allegations in paragraph 3 of the complaint that the damages accrued to plaintiff. "While in the employment of Georgia Power Company and *under the supervision* of James A. Smith, *a supervisor* for Georgia Power Company . . ." Under the Civil Practice Act all pleadings must be construed most favorably toward the plaintiff. *Harper v. DeFreitas,* 117 Ga. App. 236 (1) (160 SE2d 260); *Hunter v. A-1 Bonding Service,* 118 Ga. App. 498 (164 SE2d 246). And in motions for summary judgment "the party opposing the motion must be given the benefit of all favorable inferences." *McCarty v. National Life,* 107 Ga. App. 178, 179 (129 SE2d 408). A jury question is raised as to whether Smith was a vice-principal or merely a fellow servant, and if he was a vice-principal, the fellow servant rule relied on by the appellee is inapplicable. In *Maxwell v. Harrell,* 115 Ga. App. 97, 98 (153 SE2d 653), this court held: "While the master is not ordinarily liable for the negligence of a fellow servant (Code § 66-304), *he is liable for his own negligence or that of his vice principal acting for him."* (Emphasis supplied.) In *Moore v. Dublin Cotton Mills,* 127 Ga. 609, 610 (9) (56 SE 839), and also Headnotes 2, 3, 4, 5, 6, 7, 8, 10, the trial court was reversed in its grant of a nonsuit to defendant employer, and it was held that a jury question was presented as to whether the company's agent was a vice-principal or not. It was relevant to show that he was called "foreman," "overseer," etc. in connection with the type of order he gave and the character of work that was performed. Also see *Atlanta Cotton Factory v. Speer,* 69 Ga. 137 (1); *Whiters v. Mallory Steamship Co.,* 23 Ga. App. 47, 48 (3) (97 SE 453); *Woodson v. Johnston & Co.,* 109 Ga. 454 (1) (34 SE 587).

Therefore, in this case, a jury should have been called upon to decide whether the supervisor of Georgia Power Company was a vice-principal or mere fellow employee; and if a vice-principal, the Georgia Power Company could have been held liable for his wrongful conduct towards plaintiff.

3. Next, a jury question is created as to whether Georgia Power Company can escape liability for its conduct, in conjunction with that of its supervisor, as is set forth in paragraphs 4 and 5 and 6 of the complaint as follows: "The Plaintiff reported the incident to the proper authority for the Georgia Power Company, Mr. Miller Watkins, the manager for the Gainesville District, and Mr. Watkins acknowledged that he was aware of the circumstances.

"Plaintiff shows that thereafter, the defendants pursued a course of threats and intimidation against the Plaintiff because of this incident including cursing and abusive language, and threatening the Plaintiff that she might lose her job, all of the time the district manager was assuring her to the contrary.

"The Plaintiff was then notified by the defendants that she would be replaced by a black employee, and thereafter the defendant, Georgia Power Company, did then replace the Plaintiff with a black employee."

It is significant that *both defendants* are charged with the aforementioned conduct against plaintiff; and this is sufficient to presume they conspired together, as both did the same thing, to the same person, about the same matter, and at the same time. One was the employer and the other was its supervisor. In order to find conspiracy *alleged or proven* it is not necessary that the word "conspiracy" be used, nor is it necessary to allege that the co-conspirators ever met together, or tacitly agreed to the course of conduct which was the fruit of the conspiracy. *Grainger v. Jackson,* 122 Ga. App. 123, 128 (176 SE2d 279); *Walden v. State,* 121 Ga. App. 142, 144 (173 SE2d 110); *Nottingham v. Wrigley,* 221 Ga. 386, 388 (144 SE2d 749).

Our courts have spoken loud and clear as to the right of one to earn a livelihood, and to seek redress against anyone who wrongfully causes him to be discharged from employment. In *Luke v. DuPree,* 158 Ga. 590, 597, 598 (124 SE 13), it is made very clear that if A contracts with B, and C induces A to break that contract, then B may sue both A and C; that he has a property right in the contract; that he may sue one or both; and at p. 597, "Whoever wilfully assists in the doing of an unlawful act becomes

answerable for all the consequences of such act [citing *Chattahoochee Brick Co. v. Goings,* 135 Ga. 529, 535 (69 SE 865)]. On the theory that the parties to a contract have a property right therein any 'act of another which unlawfully interferes with such enjoyment is a cause of action.' " Again in *Studdard v. Evans,* 108 Ga. App. 819, 825 (135 SE2d 60), an attorney sued the defendant railroad and its trainmaster for conspiring to have his client repudiate his contract of employment; and it was held that both the employer and its trainmaster were liable, and the discussion at pages 822-823 is quite applicable to the facts in the case sub judice. On this subject, it has been held that although an employer may have the right to terminate the employment of his employee at any time, if a third person and the employer conspire to bring about the eventuality of discharge, an action will lie against both of them. *Ott v. Gandy,* 66 Ga. App. 684, 688, 689 (1) (19 SE2d 180). The right of enjoyment of private property (and employment is private property) being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie. (See Code § 105-1401.) Where parties conspire, the act of one is the act of all. See *Wall v. Wall,* 176 Ga. 757 (4) (168 SE 893).

Here it was shown that defendant Georgia Power Company knew plaintiff was being harassed; knew that the very wrong might occur which actually did occur; and instead of taking corrective action against its supervisor, who committed the wrongful and indecent acts, ratified his conduct, retained him in employment, and *both Georgia Power Company and its supervisor cursed, abused, threatened and intimidated plaintiff; threatened that she might lose her job and did then discharge her* and replaced her with a black employee.

What wrong had plaintiff done? Why was she cursed, abused, and threatened with loss of her job? She had reported the indecent conduct of the supervisor, *and instead of discharging the supervisor,* Georgia Power Company is alleged to have joined in with the supervisor to intimidate and discharge plaintiff. This was indeed a strange brand of justice! The one who had been wronged was discharged from employment, while the supervisor

who had committed the wrongful acts was rewarded by being retained in employment!

But it has been argued plaintiff could have protected herself by refusing to continue in employment with this fellow employee, this supervisor who had such amoral and amorous propensities. Is the sop that is held out to this virtuous female — quit your job and protect yourself — and then show that you exercised ordinary care and diligence. Is that the price of decency in this state — if she didn't want the supervisor's hand on her and caressing her — she must quit her job? It is our belief that a virtuous female is entitled to a different type of protection; and that when she reported the supervisor's conduct, her employer should not have made it necessary for her to continue to work with him, and most surely should not have discharged her because she reported him. A jury issue was created here.

4. Finally, a jury issue was created as to whether Georgia Power Company was liable for its supervisor's conduct through ratifying said conduct, in his retention in employment. See Code § 4-303.

In *Crockett Bros. v. Sibley,* 3 Ga. App. 554 (2) (60 SE 326), it is held that: "Where a wilful trespass is committed by an agent, and there is evidence that it was either commanded or assented to by the principal, section 3031 of the Civil Code, on the ratification of torts, is applicable to the issues." In *Gasway v. Atlanta & W. P. R. Co.,* 58 Ga. 216 (4), it is held that to retain an employee in service after commission of a tort is an implied ratification of his conduct. In *Napier v. Pool,* 39 Ga. 187, 196, other methods of ratification of the agent's tort are recited, such as mere silence by the employer after discovery of the wilful trespass, and see Georgia cases there cited. In *Turner v. Joiner,* 77 Ga. App. 603, 618 (48 SE2d 907), it is held: "Where the principal ratifies the tort of the agent after its commission the liability of the principal is the same as if he had commanded it, provided the ratification is had with full knowledge on the part of the principal of the manner in which the tort was committed."

In the case sub judice, Georgia Power Company did not merely retain in employment, or remain silent, but it acted in conjunction with its supervisor in intimidating

and discharging the plaintiff. One of the fellow servant cases cited in the majority opinion is that of *Smith v. Sibley Mfg. Co.,* 85 Ga. 333 (11 SE 616), *involving simple negligence only.* This case briefly discusses "ratification" at p. 336 in this language: "The fact that the defendant retained Benson after the injury was not a ratification. *If ratification applies at all, it is only when a wilful injury was inflicted by the servant."* (Emphasis supplied.) That is exactly what was done here; the supervisor did not commit simple or gross negligence; he committed a *wilful injury;* Georgia Power Company retained him in employment and allowed him to continue to harass and abuse plaintiff and to participate in causing the loss of her job. This was a high degree of ratification of the tort.

For all the foregoing reasons no summary judgment should have been granted to Georgia Power Company in this case, and the judgment of the trial court is reversed.

*Judgment reversed. Deen, P. J., Quillian, Stolz and Marshall, JJ., concur. Bell, C. J., and Pannell, P. J., concur specially. Clark and Webb, JJ., dissent.*

SUBMITTED NOVEMBER 6, 1974 — DECIDED MARCH 6, 1975— REHEARING DENIED APRIL 2, 1975 —

*John N. Crudup,* for appellant.
*Smith, Smith & Frost, R. Wilson Smith Jr.,* for appellee.

BELL, Chief Judge, concurring specially.

Involved in this case is a criminal propensity of an agent tending at least toward assault and battery — a propensity of which the company had notice and did nothing about. Under this circumstance, the employer having knowledge of this criminal propensity, cannot be insulated merely because the injury resulting from this propensity was by an act not within the scope of its agent's authority for no one can lawfully authorize another to commit a crime. Nor is the employer relieved by the fact that the fellow servant herself was aware of the propensity and nevertheless remained in the master's employment for one may not be forced lawfully to assume

the risk of being the victim of a crime. Liability for an incident of this type should be governed by the principle that an employer is required to furnish its employees a safe place to work. There is a failure to fulfill this duty where an employer retains in its service about its premises one whom it knows has criminal propensities. Liability is incurred by the master when injury results to another within his premises from an act arising out of that natural inclination to commit a crime. Whether this occurred in this case is a jury question.

I am authorized to state that Presiding Judge Pannell concurs in this special concurrence.

WEBB, Judge, dissenting.

Thelma Wiley sought from Georgia Power Company and James A. Smith $100,000 damages allegedly suffered by loss of "income and wages, humiliation, degradation, embarrassment, and cohesion," resulting from an unlawful assault and battery by James A. Smith, "by laying his hands upon [her] in a grossly improper manner and without [her] permission or consent," while she was employed by Georgia Power Company and under the supervision of James A. Smith, a supervisor for the Power Company. Mrs. Wiley alleged that the Power Company "knowingly let [her] be subjected to this incident and failed to take any steps to prevent the occurrence, although they had complete knowledge of the circumstances"; that she reported the incident to the proper authority of the Power Company; that thereafter the Power Company and Smith "pursued a course of threats and intimidations against [her] because of this incident including cursing and abusive language" and threats that she might lose her job; and that she in fact was replaced by a black employee.

The Power Company's motion for summary judgment as to itself was granted, and it is from this judgment that Mrs. Wiley appeals. The trial court in its order granting summary judgment, after a review of the entire record, concluded that there was no genuine issue of material fact as to three controlling issues: (1) The alleged acts of James A. Smith on October 17, 1972 were not the acts of Georgia Power Company, the employer, nor

by its command, were not within the prosecution nor within the scope of employment of James A. Smith, and if they occurred, it was a personal matter between James A. Smith and Mrs. Wiley, the plaintiff; (2) Georgia Power Company had no notice or knowledge of facts or circumstances sufficient to put it on notice that its employee James A. Smith had committed immoral acts prior to October 17, 1972, nor that the relationship of supervisor-employee between him and Mrs. Wiley would likely result in the acts alleged as having occurred on October 17, 1972; and (3) Mrs. Wiley was a temporary employee of the Power Company and fellow servant with James A. Smith, she had actual personal knowledge of the prior alleged immoral acts and the immoral propensities of the co-defendant and her co-employee, James A. Smith, before the alleged incident of October 17, 1972, and she continued to work and was working with James A. Smith in the service of the Power Company with such knowledge at the time of the alleged incident.

Mrs. Wiley in her deposition affirmed that she was a temporary employee, and that after the alleged incident on October 17, 1972 she continued to work in association with Mr. Smith until her employment terminated March 8, 1973.

1. The first ruling, that the alleged acts of James A. Smith, the supervisory employee of Georgia Power Company, were outside the scope of his employment, were not at the company's command, and a personal matter between Smith and Mrs. Wiley, is supported by affidavits offered by movant Power Company and is correct.

"It is well settled that if a servant steps aside from his master's business, for however short a time, to do an act which is entirely disconnected with it, and injury results to another person because of such independent voluntary act, the master is not liable for the tort." *Stafford v. Postal Telegraph-Cable Co.,* 58 Ga. App. 213 (1) (198 SE 117).

"Where the tort of the employee is wholly personal to himself, it is not within the scope of his employment, and his employer, a proprietor of a place of amusement, is 'not required to anticipate the improbable, nor to take measures to prevent a happening which no reasonable person would have expected.' [Cits.] The petition does not

allege, and reason cannot conceive, in what manner the facts alleged here might possibly be connected with the employment rather than be deemed personal to the employee; and, this being so, the master cannot be held liable for such acts." *Community Theatres Co. v. Bentley,* 88 Ga. App. 303, 305 (76 SE2d 632). See *Falls v. Jacobs Pharmacy Co.,* 71 Ga. App. 547, 549 (2) (31 SE2d 426), and cases cited.

2. As to the second ruling, there is an issue of fact as to whether Georgia Power Company through its proper authorities had knowledge on October 17, 1972 of facts or circumstances sufficient to put it on notice that James A. Smith had committed immoral acts, or that the relationship of supervisor-employee between Smith and Mrs. Wiley would likely result in some such act as that alleged to have happened. Dwight J. Eavenson, in his affidavit of June 12, 1974, submitted by Mrs. Wiley in her opposition to the Power Company's motion for summary judgment, stated that he was a District Sales Supervisor for the Power Company at its Gainesville offices, that prior to October 17, 1972 three female employees had told him of molestations by James A. Smith, asked him to give them protection and to be sure they were not left alone in the office with Smith, and that Mrs. Wiley "had come to him personally within a period of three (3) or four (4) months prior to October 17, 1972 and requested that she not be left alone in the office with James A. Smith." The ruling by the trial court that there was no question of fact as to this issue was erroneous, and standing alone would preclude a summary judgment. Code Ann. § 81A-156; *Sanders v. Alpha Gamma Alumni Chapter &c.,* 106 Ga. App. 137, 140 (126 SE2d 545); *Bankers Fidelity Life Ins. Co. v. O'Barr,* 108 Ga. App. 220 (2) (132 SE2d 546).

3. Assuming arguendo the Power Company did in fact have knowledge of Smith's amoral amorous propensities toward attractive female co-workers, any error as to the previous ruling was purged by the further ruling that Mrs. Wiley herself had actual knowledge, according to her own affidavit as well as that of Eavenson, of the prior alleged immoral acts and the immoral propensities of her co-employee, Smith, before the alleged incident of October 17, 1972, yet she continued to work

with him. If the complainant knew of the immoral conduct and propensities of her co-worker, she should not have continued working with him after coming into such knowledge.

"The master is bound to exercise ordinary care in the selection of servants, and not retain them after knowledge of incompetency." Code § 66-301. "In suits for injuries arising from the negligence of the master in failing to comply with the duties imposed by section 66-301, in order that the servant may recover, it must appear that the master knew or ought to have known of the incompetency of the other servant . . . and *it must also appear that the servant injured did not know and had not equal means of knowing such fact,* and by the exercise of ordinary care could not have known thereof." (Emphasis supplied.) Code § 66-303.

"A servant injured by the negligence of a fellow-servant who had a 'Propensity to start machines after they were stopped,' thereby nearly killing several of the servants on previous occasions (*which propensity* and its results were *known* to the master and *to the injured servant* ), is not entitled to recover damages of the master, although the negligent one was retained in employment after the injury complained of." (Emphasis supplied.) *Smith v. Sibley Mfg. Co.,* 85 Ga. 333 (11 SE 616). "If the plaintiff knew that Benson was an inefficient and negligent servant, he should not have engaged in the same service with him, any more than he should work with a defective tool given him by his employer." *Smith v. Sibley,* 85 Ga. 333, 336, supra.

Although a master is not ordinarily liable for the negligence of a fellow servant (Code § 66-304), in a proper case a servant may recover of the master for an injury occasioned by the act of a fellow servant.

"It is incumbent upon the injured servant, however, except where the employer is a railroad company, to show the following facts: first, that the fellow servant was incompetent; second, that the injury complained of resulted directly or proximately from such incompetency; third, either (a) that the master knew of such incompetency, or (b) that by the exercise of ordinary care he could have known of it; fourth, that the injured servant

did not know of such incompetency; fifth, that by the exercise of ordinary care he (the injured servant) could not have known of it; and, sixth, that he did not have equal means with the master for acquiring knowledge of such fact. [Cit.]

"In such a case there is but one degree of care prescribed by law, namely, 'ordinary' care, and that degree of care is prescribed alike for the master and for the servant. If the master has exercised such care, and has neither employed nor retained the alleged incompetent servant with knowledge of such incompetency, he is not liable. On the other hand, if *the injured servant knew of such incompetency, or by the exercise of ordinary care could have known* of it, or had equal means with the master for knowing it, but nevertheless continued in the master's employ and sustained an injury as alleged, *he can not recover, even though it appear that the master knew or ought to have known of the fellow servant's incompetency.*" (Emphasis supplied.) *Camilla Cotton Oil &c. Co. v. Walker,* 21 Ga. App. 603 (3), (4) (94 SE 855); *Newman v. Griffin Foundry &c. Co.,* 38 Ga. App. 518 (144 SE 386); *Atlanta B. & C. R. Co. v. Mullis,* 43 Ga. App. 692, 693 (159 SE 893); *Story v. Crouch Lumber Co.,* 61 Ga. App. 210, 213 (6 SE2d 86); *Windsor v. Chanticleer & Co.,* 89 Ga. App. 116, 118 (78 SE2d 871).

Mrs. Wiley's own knowledge of her fellow-worker's sensual proclivity vitiated the alleged knowledge thereof by his employer when she continued to work with him. Actually, it was not until after termination of her employment nearly five months following the alleged tortious incident that she felt pangs of embarrassment sufficient for the suit.

4. Counsel for Mrs. Wiley as appellant enumerates altogether ten alleged errors, and no citations of law appear in his brief, as was true when the case was heard in the trial court, although he makes argument on the facts. Ordinarily, in such cases the enumerations of errors are deemed abandoned. Rule 18 (c) (2), this court. Code Ann. § 24-3618. Those enumerations meritorious of consideration are covered by the foregoing opinion, and all others are without merit.

I therefore dissent, and am authorized to state that

Judge Clark joins therein.