72555, 72556. NEWSOME v. COOPER-WISS, INC. et al.;
and vice versa.
(347 SE2d 619)

</div>

BANKE, Chief Judge.

Katherine Newsome sued her former employer, Cooper-Wiss, Inc., and her former supervisor at that company, Byron Dickson, to recover actual and punitive damages based on Dickson's alleged sexual harassment of her during her employment there. She alleged in her complaint that Dickson had subjected her to sexual assault and battery, thereby interfering with her right to a "reasonable and safe atmosphere" in which to work, and had unlawfully procured her dismissal from the company. Her claim against Cooper-Wiss was based on allegations that the company had acted both negligently and maliciously in allowing Dickson to remain in a position of authority over her after being placed on notice of his alleged predatory sexual practices. Both defendants moved for summary judgment, and the trial court granted the company's motion while denying Dickson's. The plaintiff appeals from the former portion of the court's ruling, and the

defendants cross-appeal from the latter.

The plaintiff began working for Cooper-Wiss in March of 1980. In June of that year, she became secretary to the controller, who at that time was Leonard Keiller. Keiller resigned in the summer of 1982 and was replaced by Dickson, who had previously been assigned to a Cooper-Wiss plant in another state. The plaintiff worked as Dickson's secretary for approximately eight months, until her termination on May 10, 1983, which was approximately one month after she complained to the plant's personnel manager, Mr. Herrington, that Dickson was subjecting her to sexual harassment. In a memo to the file dated the day after the plaintiff's termination, the personnel manager described the plaintiff as "a long-term employee with a good work record." The termination notice prepared by Dickson specified that the plaintiff had been fired for "negative attitude towards company — chronic complainer."

Asked in her deposition to specify the nature of the alleged sexual harassment to which she had been subjected, the plaintiff testified that Dickson had repeatedly made sexually offensive comments and suggestive propositions to her, had often looked at her in a suggestive and lewd manner and, despite her objections, had made a practice of touching her and rubbing up against her in the office. Dickson denied these allegations.

In support of her allegation that Cooper-Wiss knew or should have known of such conduct by Dickson, the plaintiff submitted the affidavit of a co-employee, Diane Schomberg, who had resigned on the same day the plaintiff had been fired. Schomberg averred that during previous temporary assignments to the plant, Dickson had been "very flirtatious with female employees," including herself, and that, after coming to work as the plant's controller, he "continuously made rude, sexually suggestive remarks to me and the other female employees, including [the plaintiff], often telling us that his wife was out of town and didn't we want to come home with him." There was evidence that before Dickson arrived at the plant to assume the position of controller, the plant manager, Richard Barnes, had told a gathering of employees that he knew the company had experienced problems with Dickson in the past but felt Dickson had matured and should be given a chance.

In a memo dated April 6, 1983, regarding the plaintiff's complaint to him of sexual harassment by Dickson, the personnel manager noted that another female employee had previously complained to him of "the same type of conduct" by Dickson. He further noted that he had spoken with five other female employees in an effort to determine the validity of these complaints and that all had made "essentially the same comments as did Kathy." Finally, he indicated that upon being confronted with these accusations, Dickson had responded

that his actions and comments had been misinterpreted and had assured him that "he would address and resolve the problem." In an addendum to this memo, dated April 13, 1983, the personnel manager wrote that Dickson's subsequent "manner of conduct in the presence of office females [had] showed an immediate and marked improvement" and noted that the plaintiff had told him that she had experienced no further problems from Dickson. *Held*:

1. "In the interest of one's right of inviolability of one's person, any unlawful touching is a physical injury to the person and is actionable." *Mims v. Boland*, 110 Ga. App. 477 (1) (a) (4) (138 SE2d 902) (1964). See generally OCGA § 51-1-13. Generally speaking, an "unlawful" touching is one which is "offensive," and an "offensive" touching is one which proceeds from anger, rudeness, or lust. See *Levy v. State*, 69 Ga. App. 265 (25 SE2d 153) (1943); *Dunn v. State*, 83 Ga. App. 682 (2) (64 SE2d 478) (1951). The test, according to Professor Prosser, "is what would be offensive to an ordinary person not unduly sensitive as to his dignity." Prosser, Law of Torts, § 9, p. 37 (4th ed. 1971). Accord Restatement of Torts, 2d., § 19.

Although the plaintiff conceded that Dickson had never touched any "private area" of her body, such as her breasts or buttocks, we cannot conclude as a matter of law from the evidence of record that the touching to which she was allegedly subjected did not constitute a battery, particularly in light of her testimony that such touching was repeated over her objections throughout a period of several months, within the context of an employee-supervisor relationship which made it difficult for her to protect herself. Cf. *Murphy v. ARA Svcs.*, 164 Ga. App. 859 (298 SE2d 528) (1982); *Cox v. Brazo*, 165 Ga. App. 888 (303 SE2d 71), aff'd 251 Ga. 491 (307 SE2d 474) (1983). Consequently, we hold that Dickson was not entitled to summary judgment on the issue of whether an actionable battery had occurred.

2. Material issues of fact also remain with respect to whether Dickson was guilty of tortious interference with the plaintiff's employment rights. In *Georgia Power Co. v. Busbin*, 242 Ga. 612, 613 (250 SE2d 442) (1978), the Supreme Court held that "even though a person's employment contract is terminable at will, he has a valuable contract right which may not be unlawfully interfered with by a third person." The Court further held that where an employee's discharge is procured through the conduct of a supervisor who does not have the absolute right to fire that employee without first obtaining the advice and consent of his superiors, the supervisor may be held liable for unlawful interference with the employee's employment, even though the employment is at-will insofar as the company is concerned.

It is apparent from the record in this case that Dickson acted with the advice and consent of both the personnel manager and the

plant manager in terminating the plaintiff. It follows that he was not entitled to summary judgment with respect to the tortious interference claim. Accord *Ga. Power Co. v. Busbin,* supra; *Troy v. Interfinancial,* 171 Ga. App. 763 (1, 2) (320 SE2d 872) (1984).

3. "A cause of action for negligence against an employer may be stated if the employer, in the exercise of reasonable care, should have known of an employee's reputation for sexual harassment . . . of a fellow employee but he was continued in his employment." *Cox v. Brazo,* supra, 165 Ga. App. at 889.

As has previously been indicated, the record in this case contains evidence that Dickson had a reputation among the female employees for sexual harassment, as well as evidence that the plaintiff had not been the first to complain to the personnel manager of such misconduct on Dickson's part. Additionally, there is evidence that the company had experienced problems with Dickson in the past due to a lack of maturity on his part. In the face of such evidence, it cannot be said as a matter of law that the company had no reason to be aware of his alleged reputation for sexual harassment. It follows that material issues of fact also remain with respect to Cooper-Wiss's liability.

4. Cooper-Wiss correctly asserts that it cannot be held liable for punitive damages based on mere negligence. See *Alliance Transp. v. Mayer,* 165 Ga. App. 344 (301 SE2d 290) (1983). However, it does not follow that the company is entitled to summary judgment on the claim for punitive damages. It has been held that an employer who, upon being apprised of alleged tortious misconduct by a supervisor against another employee, discharges the employee and retains the supervisor may be deemed to have ratified the alleged misconduct and may thereby be subject to joint liability for it. See *Wiley v. Ga. Power Co.,* 134 Ga. App. 187 (4) (213 SE2d 550) (1975), disapproved on other grounds, *Ga. Power Co. v. Busbin,* supra, 242 Ga. at 615. We hold that the plaintiff's complaint may reasonably be construed as asserting such a theory of recovery and that material issues of fact exist with respect to whether such ratification by the company of Dickson's alleged misconduct actually took place.

5. For the foregoing reasons, we affirm the denial of Dickson's motion for summary judgment but reverse the grant of summary judgment to Cooper-Wiss.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Sognier, J., concur.*

DECIDED JUNE 19, 1986 —
REHEARING DENIED JULY 7, 1986 — 

*Francis M. Stubbs,* for appellant.

*Curtis L. Mack, Adam J. Conti,* for appellees.